SALEM AND BEVERLY WATER SUPPLY BOARD *vs.*
COMMISSIONER OF REVENUE & another.[1]

No. 87-342.

Suffolk. February 11, 1988. — May 26, 1988.

Present: BROWN, KAPLAN, & SMITH, JJ.

*Statute,* Construction, Repeal, Special law. *Taxation,* Real estate tax: payment in lieu of tax. *Salem and Beverly Water Supply Board.*

General Laws c. 59, § 5F, governed the valuation of property of the Salem and Beverly water supply board for purposes of determining payments to be made by the board in lieu of municipal real estate taxes, and this statute superseded the repealed provisions of G. L. c. 59, § 7A, notwithstanding their incorporation by specific reference in the board's enabling act, where the enabling act, by its terms, contemplated that subsequent amendments to § 7A, including its repeal, would be applicable to property held by the board [76-78], and where the comprehensive revisions of G. L. c. 59 in 1978 and 1979 demonstrated a legislative intent that the determination of value be governed by statutory provisions currently in effect [76-79].

APPEAL from a decision of the Appellate Tax Board.

*John R. Serafini, Jr.,* for the Salem and Beverly Water Supply Board.

*Steven H. Goldberg,* Assistant Attorney General, for the Commissioner of Revenue.

SMITH, J. The Salem and Beverly water supply board (water supply board) appeals from a decision of the Appellate Tax Board (tax board) which affirmed a ruling of the Commissioner of Revenue (commissioner). The commissioner ruled, and the tax board agreed, that G. L. c. 59, § 5F, governed the valuation of the water supply board's property for the purpose of deter-

---

[1] The town of Danvers.

mining its payment to Danvers in lieu of property taxes. The water supply board disagrees and argues that its payment should have been calculated pursuant to G. L. c. 59, § 7A, inserted by St. 1945, c. 367, § 2.

We summarize the facts, which are undisputed. The water supply board was created by St. 1913, c. 700 (Enabling Act), for the purpose of providing an additional water supply for the cities of Salem and Beverly. The Enabling Act authorized the water supply board on behalf of the two cities to take or acquire, by purchase or otherwise, all lands, rights-of-way, and easements within certain named cities and towns, including the town of Danvers, which might be necessary, in its opinion, for collecting, storing, holding, purifying, and preserving the purity of water taken under the authority of the Enabling Act.

The Enabling Act was amended by St. 1951, c. 697, § 1, to include specifically within the acquisition clause a 454-acre parcel located in Danvers. That property was acquired by the water supply board on April 22, 1953, by eminent domain for use as a reservoir. The amendment further provided that if the water supply board made takings of land in certain named cities and towns, including Danvers, for the purpose of a reservoir, it should annually pay to that city or town "such sums in lieu of taxes upon both land and buildings taken or acquired as provided in section seven A of chapter fifty-nine of the General Laws."

General Laws c. 59, § 7A, inserted by St. 1945, c. 367, § 2, provided in pertinent part that land acquired on or after January 2, 1946, by a district, and held on January 1 in any year for any public purpose, and whose location was in a municipality other than those municipalities which constitute the district, was to be exempt from taxation. The holder of the land, however, was to pay to the municipality wherein the land was located, in lieu of taxes, the amount which would be assessable in such year upon a valuation equal to the average assessment, reduced by abatements, for the three years next preceding the acquisition of the land. The statute was amended by St. 1968, c. 497, § 2. That amendment included a provision which permitted the State Tax Commission to determine the

valuation "[w]henever a city or town in which such land is located shall have made a general revaluation of all its real property for purposes of taxation . . . ." The revision also included the requirement that "the payment with respect to such land shall remain substantially the same as that made prior to such revaluation."[2]

In 1978 and 1979, the Legislature made major changes in the property tax statutes. In 1978, the Legislature enacted St. 1978, c. 580, which by § 30 repealed G. L. c. 59, § 7A, in its entirety. In 1979, the Legislature replaced G. L. c. 59, § 7A, with G. L. c. 59, § 5F, inserted by St. 1979, c. 797, § 12. Section 5F does not include the requirement formerly contained in § 7A that payment in lieu of taxes "remain substantially the same as that made prior to such revaluation."

The town of Danvers made a general revaluation of its real property for the purposes of taxation in 1981, and the first assessments under the revaluation were made in 1982. Pursuant to G. L. c. 59, § 5F, the commissioner[3] determined the new valuation of the land owned by the water supply board in Danvers to be $1,906,800. At the town's 1982 tax rate of $24.20, the commissioner's valuation resulted in an amount in lieu of taxes of $46,125.20 to be paid by the water supply board to Danvers.[4]

The water supply board contends that because the 1951 amendment (St. 1951, c. 697, § 2) to the Enabling Act incorporated by specific reference G. L. c. 59, § 7A, as in effect at the time of the 1951 amendment (i.e., as inserted by St. 1945,

---

[2] This provision was subsequently deleted by St. 1978, c. 457, § 2.

[3] In 1978 the commissioner succeeded to all the powers and duties of the State Tax Commission under G. L. c. 59, § 5F. See St. 1978, c. 514, § 279.

[4] In the three years prior to the general revaluation, the water supply board had paid the following amounts to Danvers in lieu of taxes:

| Year | Valuation | Rate | Paid |
|------|-----------|------|------|
| 1978 | $193,000  | $70.09 | $13,510 |
| 1979 | $193,000. | $74.00 | $14,282 |
| 1980 | $193,000  | $74.00 | $14,282 |

c. 367, § 2), the valuation of its property is immune from any subsequent amendments to § 7A, including its repeal.[5] It relies on canons of statutory construction which state that "[a] statute of specific reference incorporates the provisions referred to from the statute as of the time of adoption without subsequent amendments" and "repeal of the statute referred to will have no effect on the reference statute . . . ." 2A Sands, Sutherland Statutory Construction § 51.08 (4th ed. 1984) (hereinafter Sutherland). In a general sense, the principles relied on by the water supply board are correct. However, they do not apply to this case.

As is often the case in regard to the law of statutory construction, there is an exception to the principles on which the water supply board bases its contention. The principles do not apply where "the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute." Sutherland, *supra* at § 51.08. Those indicia of legislative intent are present here.

In the 1913 Enabling Act, the Legislature explicitly stated that future legislation would apply to the water supply board. The Act includes the following language: "Section 4. Subject to rights already granted or to be granted in the future by the general court *and subject to such regulations and obligations as may hereafter be prescribed or imposed by the general court*, or otherwise as provided in this section and the following sections, said board, acting in behalf of said cities, may, for the purpose of providing a further supply of water . . . take . . . the waters of the Ipswich river . . . and . . . all lands . . . within . . . Danvers . . . which may in its opinion be necessary . . . [emphasis supplied]." St. 1913, c. 700, § 4.

The 1951 amendment to the Enabling Act does not detract from the statutory directive that the water supply board's power

---

[5]There is no question that the 1951 amendment to the Enabling Act is legislation of the specific reference type. "There are two general types of reference statutes: statutes of specific reference and statutes of general reference. A statute of specific reference, as its name implies, refers specifically to a particular statute by its title or section number. A general reference statute refers to the law on the subject generally." 2A Sands, Sutherland Statutory Construction § 51.07 (4th ed. 1984).

to acquire rights to water, land, and related facilities would remain subject to future "regulations and obligations" imposed by the Legislature. Rather, St. 1951, c. 697, § 2, merely added a new section, § 4A, to the Enabling Act. That section required the water supply board to make annual payments in lieu of taxes to its member towns and cities pursuant to G. L. c. 59, § 7A, if it should take land, buildings, or easements "for the purpose of a water reservoir." The power to take land for that purpose is supplied by St. 1913, c. 700, § 4. Because § 4A must be read as an integral part of the act which it amended, it is clear that the obligation to make payments in lieu of taxes is "subject to such regulations and obligations as may hereafter be prescribed or imposed by the general court." St. 1913, c. 700, § 4. Therefore, by its terms, the water supply board's Enabling Act contemplated that subsequent amendments to G. L. c. 59, § 7A, including its repeal, would be applicable to property held by the board in other cities or towns.

In addition, the comprehensive revisions of G. L. c. 59 by St. 1978, c. 580, and St. 1979, c. 797, demonstrated legislative intent to govern the water supply board by current statutory obligations. Repeals by implication[6] are disfavored by the appellate courts of the Commonwealth, particularly where general statutes are said to supersede earlier special acts. *Chernick* v. *Chief Administrative Justice of the Trial Court*, 395 Mass. 484, 487-488 (1985). However, it is well established that general legislation will supersede a special act "where the more general statute was enacted to provide a comprehensive coverage of the subject area." *Boston Housing Authy.* v. *Labor Relations Commn.*, 398 Mass. 715, 719 (1986). Also see *Warr* v. *Collector of Taxes of Taunton*, 234 Mass. 279, 282 (1920)("When the Legislature has dealt in a comprehensive way with an entire subject, the general principle is that previous conflicting provisions of the law are not continued in force").

The Supreme Judicial Court has described St. 1979, c. 797, as "a comprehensive scheme of property valuation and classifi-

---

[6] General Laws c. 59, § 7A, was expressly repealed by St. 1978, c. 580, § 30. It is the "implied incorporation" of G. L. c. 59, § 5F, into St. 1913, c. 700, § 4A, to which the water supply board objects.

cation, which represents the latest in a long series of dramatic developments in the area of property taxation in this Commonwealth." *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 890 (1980). The court was referring to a course of events first marked by "a complete, widespread, and fundamental failure [by local officials] to comply with either the constitutional or the statutory requirements for proportional assessment" *(Bettigole* v. *Assessors of Springfield*, 343 Mass. 223, 232 [1961]), required by Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. *Keniston* v. *Assessors of Boston, supra*. See also *Sudbury* v. *Commissioner of Corps. & Taxn.*, 366 Mass. 558, 563 (1974) ("[I]llegal assessments have long been the rule rather than the exception throughout much of the Commonwealth"). As a result of public opposition to the concept of 100 per cent valuation, art. 112 of the Amendments to the Massachusetts Constitution was approved by the people on November 7, 1978. That amendment opened the way for the passage of St. 1978, c. 580, and St. 1979, c. 797, which substantially rewrote the procedures relative to the assessment of property taxes in the Commonwealth. Therefore, it is obvious from the sweep of its revisions to G. L. c. 59 that the Legislature intended that the current version of G. L. c. 59, § 5F, control the determination of the value of the property held by the water supply board in Danvers.

*Decision of the Appellate Tax Board affirmed.*