222         63 Mass. App. Ct. 222 (2005)

Salem and Beverly Water Supply Board *v.* Board of Assessors of Danvers.

## SALEM AND BEVERLY WATER SUPPLY BOARD *vs.* BOARD OF ASSESSORS OF DANVERS.

No. 04-P-84.

Suffolk. October 14, 2004. - April 5, 2005.

Present: GREENBERG, KAPLAN, & TRAINOR, JJ.

*Taxation,* Real estate tax: classification of property. *Real Property,* Tax. *Municipal Corporations,* Water supply. *Water.*

The Appellate Tax Board correctly concluded that a town's board of assessors properly applied a commercial tax rate to an entity (located within the town) operating a water supply system for two other municipalities. [224-228]

APPEAL from a decision of the Appellate Tax Board.

*John R. Serafini, Jr.,* for the taxpayer.

*Michael C. Lehane* for Board of Assessors of Danvers.

KAPLAN, J. The appellant Salem and Beverly Water Supply Board (water supply board), created by St. 1913, c. 700 (the enabling act, amended from time to time), operates a joint water supply system for the municipalities of Salem and Beverly. The enabling act authorizes the water supply board to withdraw water from the Ipswich River and to acquire land in any of several named municipalities, including Danvers, and to build filtration plants and other facilities for the operation of the joint system.

Pursuant to St. 1951, c. 697, amending the enabling act, the water supply board on April 22, 1953, took by eminent domain 454 acres in Danvers and subsequently constructed the Putnamville Reservoir thereon; the reservoir covers 312 acres, leaving 142 acres of surrounding watershed land.

Water pumped from the Ipswich River is stored in the Putnamville Reservoir and is drained through a pipeline and into

the Wenham Lake Reservoir; the water supply board then drains water from the Wenham Lake Reservoir into its treatment plant in Beverly, treats it, and stores the treated drinking water in its underground reservoir. Beverly and Salem separately pump drinking water from this reservoir into their own water distribution systems.

The Putnamville Reservoir is open to and used by the public for fishing, both from the shore and from unpowered rowboats on the reservoir itself; the public also uses the surrounding land for walking and hiking, et cetera.

The water supply board annually assesses Salem and Beverly for the capital, operational, and maintenance costs for the joint system; these municipalities then charge their water users rates that are based on the assessed costs, to which are added each municipality's costs of operating its own water distribution system.

Under G. L. c. 59, § 5F, the water supply board is obligated to pay a tax[1] to the town of Danvers based on the value of the land it holds in the town. On April 27, 2001, the board of assessors of Danvers (appellee herein) issued a determination valuing the 454 acres of land and structures thereon at $10,686,800 and stating that it intended to use the fiscal year 2002 commercial tax rate in calculating the fiscal year 2002 tax charged to the water supply board.

The water supply board takes the position that neither the commercial rate ($16.98 per thousand dollars of value) nor any other rate has been effectively prescribed, but as § 5F expresses an intention to lay a tax in the present situation, it is willing to make a payment, but at the lower residential rate ($12.92 per thousand dollars). On July 9, 2001, the water supply board appealed under formal procedure to the Appellate Tax Board from the board of assessors' refusal to abate the tax as demanded.

The parties have stipulated that the value of the property as of January 1, 2001, for purposes of the fiscal year 2002 tax was not the $10 million figure, but $5,127,060. This value applies to

---

[1]Section 5F in terms lays a "tax." The water supply board, and the Appellate Tax Board itself, speak of "payment in lieu of tax," or "PILOT." This expression appeared in earlier legislation and became colloquial, but it is not strictly applicable to § 5F and tends to get in the way of analysis.

the 142 acres of watershed land; zero value is attributed to the 312 acres of land under the reservoir itself. Cf. *Boylston* v. *Commissioner of Rev.*, 434 Mass. 398, 405-406 (2001).

Both parties by motion asked the Appellate Tax Board to issue a legal ruling on the one issue dispositive of the appeal, namely, the tax rate to be applied. The Appellate Tax Board did so (under 831 Code Mass. Regs. § 1.22 [1996] procedure) on July 2, 2003, ruling, in agreement with the board of assessors, that the commercial tax rate properly applied (as that term is defined in G. L. c. 59, § 2A[*b*]). At the request of the appellant water supply board, the Appellate Tax Board (under G. L. c. 58A, § 13, and 831 Code Mass. Regs. § 1.32 [1996] procedure) issued findings of fact and report embodying an opinion on December 5, 2003.

We shall affirm the ruling of the Appellate Tax Board in favor of the appellee board of assessors of Danvers.

1. The parties accept that G. L. c. 59, § 5F, as amended through St. 1987, c. 518, § 2, applies to the property of the water supply board located in Danvers; the water supply board may be viewed notionally as the "holding municipality" under § 5F. See *Salem & Beverly Water Supply Bd.* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 74, 79 (1988). According to § 5F, this property is "exempt from taxation . . . except as hereinafter otherwise provided."[2] Section 5F goes on to provide that the holding municipality "shall . . . pay to the municipality in which such land is located the amount which would be assessable . . . upon a valuation" described as "full and fair cash valuation" of the property, and the statute then speaks of "the tax payment hereinbefore provided."

2. The parties are clear (as are we) that if the town of Danvers was levying the property tax on a uniform, unclassified, single rate basis, that would be the rate of tax for the water supply board as for other property owners of the town. If so, it would be remarkable that the law failed to catch up the water supply board in the classification system and the appropriate tax

---

[2]The water supply board tries to lay emphasis on the single word "exempt" in § 5F. But § 5F defines a "tax payment" as appears in its text that follows.

rate thereunder, in company with others in the same class, when Danvers should elect, as indeed Danvers did,[3] to tax on a classification basis.[4]

In fact, although § 5F of c. 59 does not state in so many words what rate of tax the water supply board qua municipality should pay to Danvers, it rather leads the taxpayer into a series of statutory provisions that finally yield the appropriate rate for the relevant class, which here is the commercial class. The statutes are somewhat labyrinthine and repetitious in style, but they are by no means inscrutable in substance.

Section 5F provides that, whenever the Commissioner of Revenue certifies a city or town as assessing property at full and fair cash valuation under G. L. c. 40, § 56,

> "the valuation of such land shall be determined by the assessors of the municipality in which such land is located as of January first of the year of such certification subject to the commissioner's determination, under the provisions of [G. L. c. 58, § 1A,] and [G. L. c. 59, § 2A(c)], that said valuations are at full and fair cash valuation. The valuations so determined shall be used for the purpose of payments authorized by this section . . . ."

G. L. c. 59, § 5F.

Section 2A, as amended through St. 1997, c. 164, § 69, refers directly to the classification of properties:

> "Classification of real property shall not be implemented in any city or town until the commissioner has certified in writing to the assessors . . . that the assessments on the real property that they propose to make are at full and fair cash valuation as required by [G. L. c. 59, § 38,] and that a majority of its assessors are qualified to classify its property."

G. L. c. 59, § 2A(c).

Section 38 of c. 59 states in part

---

[3]For details, see G. L. c. 40, § 56.

[4]Section 5F was enacted together with tax classification in St. 1979, c. 797.

"The assessed valuation of real property subject to taxation under this chapter[5] shall be classified as follows: —

"Class one, residential;

"Class two, open;

"Class three, commercial, and

"Class four, industrial.

"The resulting amount shall be the taxable valuation of each class of property to which the assessors shall apply the tax rates applicable to each class as determined under [G. L. c. 59, § 23A,] of the city or town, to determine the tax due and payable on such property."

G. L. c. 59, § 38, inserted by St. 1979, c. 797, § 15.

Section 2A(*b*) defines the four classes (we consider these definitions *infra*) and c. 40, § 56, deals with percentages of the total levy to be allocated to the classes as so defined, which yield the tax rate for each class. Finally, c. 59, § 23A (cited in c. 59, § 38, *supra*), provides that the assessors shall notify the municipal finance officers in accordance with the percentages established under c. 40, § 56.

3. Thus the water supply board was taxable in respect to its property in Danvers according to the classification-by-usage mode elected by the town. The remaining issue is whether the assessors classified the property correctly as class 3, "commercial." The property did not fit as class 1, "residential,"[6]

---

[5]Which, we recall, by means of § 5F, comprehends the present case of land owned by the water supply board in another municipality.

[6]" 'Class one, residential', property used or held for human habitation containing one or more dwelling units including rooming houses with facilities designed and used for living, sleeping, cooking and eating on a nontransient basis, including a bed and breakfast home with no more than three rooms for rent. Such property includes accessory land, buildings or improvements incidental to such habitation and used exclusively by the residents of the property or their guests. Such property shall include: (i) land that is situated in a residential zone and has been subdivided into residential lots; and (ii) land used for the purpose of a manufactured housing community, as defined in section thirty-two F of chapter one hundred and forty. Such property shall not

as it was not "held for human habitation containing one or more dwelling units"; and although apparently "situated in a residential zone," it had not been "subdivided into residential lots." G. L. c. 59, § 2A(*b*). See *Meachen* v. *Assessors of Sudbury*, 26 Mass. App. Tax Bd. Rep. 385, 391 (2001). Nor was it "accessory" as defined. G. L. c. 59, § 2A(*b*).

The class 3, "commercial"[7] classification allows for property "held for use for business purposes and not specifically includible in another class, including . . . service, recreational, . . . sporting, . . . governmental" enterprises for non-profit purposes. *Ibid.* The Appellate Tax Board, approving the "commercial" classification, properly rejected suggestions by the water supply board that (i) the property was not commercial because it was not a business enterprise and did not generate profit; (ii) the recreational use of the property and the zoning of the surrounding area as residential rendered it akin to residential; and (iii) considerations of "highest and best use" have some bearing on classification under c. 59, § 2A(*b*) (such considerations, however, might bear on valuation).[8]

The water supply board concedes its offer is not a gratuity but a tender of payment of an obligation — not ex gratia but ex debito. The amount of the payment, however, is not for the

include a hotel, or motel. Such property may be exempt from taxation under other provisions of law." G. L. c. 59, § 2A(*b*).

[7] " 'Class three, commercial', property used or held for use for business purposes and not specifically includible in another class, including but not limited to any commercial, business, retail, trade, service, recreational, agricultural, artistic, sporting, fraternal, governmental, educational, medical or religious enterprise, for non-profit purposes. Such property may be expressly exempt from taxation under other provisions of this chapter." G. L. c. 59, § 2A(*b*).

[8] That "class 3, commercial" is the correct class for the present case is confirmed by the Department of Revenue's division of local services. The record appendix herein contains a "Payment in Lieu of Taxes Worksheet [for] G. L. Chapter 59, § 5F," evidently directed to the town of Danvers, which sets out the following in part:

| A | B | C | D |
|---|---|---|---|
| Fiscal Year | Valuation | Tax Rate (Commercial) | Statutory Payment (B x C) |

water supply board to settle but for prescription by the statutes as applied. In this we agree with the Appellate Tax Board whose judgment, were there doubt, would be entitled to some respect. See *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981).

*Decision of the Appellate Tax Board affirmed.*