MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.* CITY
OF SOMERVILLE & another[1] (and two companion cases[2]).

Suffolk. February 7, 2008. - April 4, 2008.

Present: GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Massachusetts Bay Transportation Authority. Zoning,* Billboards. *Billboard.
Advertising. Outdoor Advertising Board. Governmental Immunity.*

In civil actions arising from the erection by the Massachusetts Bay Transporta-
tion Authority (MBTA) of outdoor advertisements on its facilities in one
city, and its plan to erect other advertisements on its facilities in another
city, the judge, acting on a motion for a case stated and motions for sum-
mary judgment, properly concluded that the advertisements were not subject
to the cities' zoning ordinances, where the MBTA's enabling statute, G. L.
c. 161A, grants the MBTA's board of directors exclusive authority to
determine the character and extent of its facilities, including whether and
what type of advertisements to erect on its facilities, and where the zoning
ordinances would have more than a negligible effect on action reasonably
related to the MBTA's ability to fulfil its essential function. [84-88]
In civil actions arising, inter alia, from the erection by the Massachusetts Bay
Transportation Authority (MBTA) of outdoor advertisements on its facili-
ties in a city, there was no merit to the claim that the Outdoor Advertising
Board (board) (which may adopt regulations for control of advertisements
on common carriers) should exercise jurisdiction over those advertise-
ments, where the MBTA could not be considered a common carrier [88-89];
likewise, that the board had not issued a permit for those advertisements
did not give it jurisdiction in the matter, where the board itself had concluded
that the MBTA's property was neither a public way nor a private facility
and that the board therefore had no authority to regulate those advertise-
ments [89].
In civil actions arising, inter alia, from the plan of the Massachusetts Bay
Transportation Authority (MBTA) to erect outdoor advertisements on its
facilities in a city, the Outdoor Advertising Board did not err by issuing
permits that allegedly did not comply with the city's zoning ordinances,
where the MBTA's enabling statute, G. L. c. 161A, exempted the MBTA
from those ordinances. [89]

CIVIL ACTION commenced in the Superior Court Department on
November 3, 2006.

[1]City of Melrose.

[2]City of Melrose *vs.* Massachusetts Bay Transportation Authority & others.
City of Somerville & another *vs.* Massachusetts Bay Transportation Authority
& others.

CIVIL ACTION commenced in the Superior Court Department on November 6, 2006.

CIVIL ACTION commenced in the Superior Court Department on November 30, 2006.

After consolidation, the case was heard by *Allan van Gestel,* J., on motions for summary judgment and a motion for judgment on a case stated.

The Supreme Judicial Court granted an application for direct appellate review.

*David P. Shapiro,* Assistant City Solicitor, for city of Somerville.

*David R. Lucas* for city of Melrose.

*Brian A. Davis* (*Jean-Paul Jaillet* with him) for Massachusetts Bay Transportation Authority.

*Iraida J. Alvarez,* Assistant Attorney General, for Outdoor Advertising Board.

*George A. Berman,* for Clear Channel Outdoor, Inc., was present but did not argue.

SPINA, J. In these consolidated cases, we consider whether the cities of Melrose and Somerville (cities) may regulate through their zoning ordinances billboards and signs for commercial advertising in and on the facilities of the Massachusetts Bay Transportation Authority (MBTA). The MBTA filed an action in the Superior Court in Suffolk County seeking a judgment declaring that the MBTA's commercial advertising in and on its facilities is immune from local zoning regulation. The cities subsequently filed an action in the Superior Court in Middlesex County regarding the applicability of local zoning ordinances to MBTA property and regarding the jurisdiction and authority of the Outdoor Advertising Board (board) to issue permits for the advertisements in question. Clear Channel Outdoor, Inc. (Clear Channel), later was allowed to intervene as a plaintiff in the case brought by the MBTA. The actions were consolidated in the business litigation session of the Superior Court in Suffolk County. On a motion for judgment on a case stated and on cross motions for summary judgment, a judge concluded that the advertisements in question were not subject to the cities' zoning regulations. The cities appealed, and we granted the MBTA's application for direct appellate review. We affirm.

*Background.* We summarize the facts agreed on by the parties. The MBTA is a political subdivision of the Commonwealth and a body politic and corporate. G. L. c. 161A, § 2. It has the power to provide mass transportation services and to operate and manage facilities used in connection with those services. G. L. c. 161A, §§ 1, 3 (*c*) & (*i*). The MBTA has erected outdoor advertisements on its facilities in Melrose, and seeks to erect others on its facilities in Somerville. To erect these advertisements, the MBTA has worked with Clear Channel and Titan Outdoor LLC (Titan), two outdoor advertising companies.

In Somerville, Clear Channel (with the MBTA's knowledge and permission) applied to the board for permission to erect advertisements on certain MBTA facilities, and the board issued permits therefor.[3] Neither the MBTA nor Clear Channel sought permission from any Somerville board or agency. The parties agree that the advertisements, if they are subject to Somerville's zoning ordinances, would not comply with them.[4] The parties agree, in addition, that "Somerville's attempt to compel compliance with [its zoning ordinance] and the likely issuance of a cease and desist order by Somerville and the possible imposition of fines and penalties if Clear Channel and/or the MBTA proceed with the erection of the Somerville Signs are adversely affecting and frustrating the MBTA's and Clear Channel's ability to generate revenue from those signs."

In Melrose, Titan (with the knowledge and approval of the MBTA) already has erected advertisements on MBTA property. Neither the MBTA nor any other entity applied to the board or

---

[3]The parties have agreed that "Clear Channel and the MBTA understood that prior approval of the Somerville Signs by the [b]oard was necessary because the proposed signs would be located within 660 feet of the nearest edge of [Interstate 93 (I-93)], would be visible from the main traveled way of I-93, and, therefore, would be subject to the provisions of the federal Highway Beautification Act of 1965 (23 U.S.C. § 131), as administered in the Commonwealth of Massachusetts by the [b]oard pursuant to G. L. c. 93D, §§ 1-7."

[4]The statement of agreed facts is silent as to the precise reasons for noncompliance. The record appendix indicates that permits approved by the board were for double-sided billboard-type signs whose dimensions were forty-eight by fourteen feet. That is, each advertisement had an area of 672 square feet. Somerville claims that the MBTA's signs are not in compliance with art. 12.4 of its zoning ordinance, a provision that permits a free-standing sign to have, at most, an area of 250 square feet. In addition, there may be noncompliance based on the height of the advertisements.

to Melrose for permits to erect these advertisements.[5] The city solicitor of Melrose requested that the board order the MBTA either to apply for permits pursuant to G. L. c. 93, §§ 29-33, or to remove its advertisements. The board concluded that it did not have jurisdiction over the advertisements. The Melrose building commissioner and zoning enforcement officer later informed the MBTA that they believed two of the advertisements on MBTA facilities violated the Melrose zoning ordinance and ordered the MBTA immediately to cease and desist the use of such advertisements. The MBTA refused. The parties agree that the advertisements, if they are subject to Melrose's zoning regulations, would not comply with them.[6,7] The parties agree, in addition, that the

---

[5]The parties have agreed that "Titan and the MBTA did not seek prior approval of the Melrose Signs by the [board] because, *inter alia*, they believe that the proposed signs are on public property and, thus, (a) are not located 'on public ways or on *private property* within public view of any highway, public park or reservation' for purposes of G. L. c. 93, § 29, and (b) are not located within 660 feet from the nearest edge of an interstate or federal primary highway, and are not visible from the main traveled way of an interstate or federal primary highway, and, therefore, are not subject to the provisions of the federal Highway Beautification Act of 1965, as administered in the Commonwealth of Massachusetts by the [board] pursuant to G. L. c. 93D, §§ 1-7" (emphasis in original).

The parties agree that the "Melrose Signs are freestanding, double-sided signs supported by vertical poles affixed to the MBTA's property. Each sign is approximately 46 inches in height by 120 inches in length, stands approximately two feet off of the ground, and measures approximately forty (40) square feet in area. Altogether, the Melrose Signs typically contain twelve (12) separate advertisements."

[6]The parties agree that the signs fail to comply with art. VII of the Melrose zoning ordinance which, in part, states:

"Signs permitted in any business district.

" . . .

"Business signs shall be permitted as follows:

" . . .

    "(2) One pole sign for each street frontage of a drive-in establishment, including automobile service stations, provided that it shall not exceed 40 square feet in surface area, no portion of it shall be set back less than 10 feet from any street lot line, it shall not be erected so that any portion of it is over 15 feet above the ground or sidewalk, and, if lighted, it shall be illuminated internally by white light only."

[7]The parties agree that Titan (with the knowledge and approval of the

"enforcement of the Cease and Desist Order issued to the MBTA by Melrose with respect to the Melrose Signs, and the possible imposition of fines and penalties if the MBTA does not comply with that Order, would adversely affect and frustrate the MBTA's ability to generate revenue from those signs."

*Discussion.* Where a statement of agreed facts contains all the material facts on which the rights of the parties are to be determined in accordance with law, it constitutes a "case stated." *Caissie* v. *Cambridge,* 317 Mass. 346, 347 (1944). As such, "[t]he inferences drawn by the trial judge from the facts stated are not binding upon us, and questions of fact as well as questions of law are open for review upon these appeals." *Id.*

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.,* 413 Mass. 534, 536 (1992). In the present case, there are no material facts in dispute, and we have viewed all facts in the light most favorable to the cities.

The cities argue that the judge erred in concluding that the advertisements in or on MBTA facilities are not subject to their local zoning ordinances. Although the parties agree that the advertisements are located on MBTA facilities, the cities argue that under the MBTA's enabling statute, G. L. c. 161A, only

MBTA) erected three commercial advertising signs on or near the train platform at the Cedar Park Station. The parties further agree that these three signs are freestanding, double-sided signs supported by vertical poles and that, for the purposes of art. VII of the Melrose zoning ordinance, the station where these advertisements are located is in a "BC" local business district.

Sections 235-26 and 235-27 (E) of art. VII provide that no signs shall be permitted "except in accordance with the following regulations" and that "[n]o more than two signs shall be allowed for any one business or industrial establishment" in the business and industrial districts.

Although the parties do not state in the agreed facts exactly how the signs fail to comply with the Melrose zoning ordinances, we can reasonably infer from the facts above that the MBTA, if subject to art. VII, would have to take down at least one of its three signs.

services, equipment, and facilities are exempt from local regulation and that the advertisements in question are not services, equipment, or facilities.

The MBTA enabling statute, in an exemption clause, provides that the MBTA board of directors, except as otherwise provided in G. L. c. 161A, has the duty to "determine the character and extent of the services and facilities to be furnished, and in these respects their authority shall be exclusive and shall not be subject to the approval, control or direction of any state, municipal or other department, board or commission except the [MBTA's] advisory board." G. L. c. 161A, § 3 (*i*). The statute defines mass transportation "facilities" as "all real property, including land, improvements, terminals, stations, garages, yards, shops and structures appurtenant thereto . . . used in connection with the mass movement of persons." G. L. c. 161A, § 1.

The cities concede that the advertisements are located on MBTA facilities. The exemption clause in G. L. c. 161A, § 3 (*i*), gives the MBTA board exclusive authority to determine the character and extent of its facilities. It thus would appear that, on the face of the statute, the determination by the MBTA board whether and what type of advertisements to erect on its facilities is a determination as to the character of its facilities. As such, it is included within the exclusive authority of the MBTA board, and therefore the MBTA is exempt from local zoning regulations with respect to advertisements erected on its facilities.

The cities nevertheless argue that, with respect to the advertisements at issue here, the MBTA should not be exempt from the cities' zoning ordinances because those ordinances will not interfere with the essential government function of the MBTA, namely, mass transportation, or with an action reasonably related to that function.

Where an enabling statute creates an exemption from regulation, a statutorily created entity is not necessarily exempt from all regulation. See, e.g., *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 653, 655, 658 (1974); *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth.*, 348 Mass. 107, 118 (1964), cert. denied, 380 U.S. 955 (1965). A regulation generally will apply to an exempt entity where that regulation serves an impor-

tant purpose and either would have no effect at all or a merely negligible effect on the entity's ability to fulfil its essential government function or an action "reasonably related" to its ability to fulfil that function.[8] See *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 22 (2003); *Bourne* v. *Plante*, 429 Mass. 329, 332 (1999).

In the present case, the zoning ordinances will have more than a negligible effect on action reasonably related to the MBTA's ability to fulfil its essential function. The MBTA's essential function is to provide mass transportation services. See G. L. c. 161A, § 3. The parties agree that "[i]ncome that the MBTA generates, directly or indirectly, from commercial advertising in and on MBTA facilities and properties — including the advertising revenue received from Clear Channel and Titan — is used by the MBTA to help defray the costs of its transportation operations."

Furthermore, the statutory scheme creating the MBTA creates a direct relation between the MBTA's provision of mass transportation services and the revenues that it must raise from nontransportation sources. The Legislature specifically has authorized the MBTA to raise revenues through commercial advertising and has required the MBTA to maximize revenues from all nontransportational revenue sources. G. L. c. 161A, §§ 3 (*n*),[9] 11.[10] Accordingly, the MBTA is required by statute to maximize its

---

[8]The Legislature almost certainly would not intend to exempt an entity from a regulation where the statute authorizing the regulation expressly applies to the type of entity in question. See *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 432 (1979) ("The Legislature cannot reasonably be expected to amend every general or special law creating a semiautonomous authority whenever it enacts legislation obviously aimed at all such authorities"). See also *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 653, 658 (1974). The cities do not argue that the zoning statutes expressly apply to authorities such as the MBTA.

[9]General Laws c. 161A, § 3, provides in relevant part: "In addition to all powers otherwise granted to the authority by law, the authority shall have the following powers . . . (*n*) [t]o sell, lease or otherwise contract for advertising in or on the facilities of the authority." This broad grant of authority does not limit the MBTA to self-advertising, but rather authorizes the MBTA to engage in commercial advertising for third parties as an independent source of revenue.

[10]General Laws c. 161A, § 11, provides in relevant part: "The board shall establish and implement policies that provide for the maximization of nontransportation revenues from all sources."

revenues from commercial advertising. Such revenues affect the operations of the MBTA. These revenues also affect the fares charged by the MBTA, for the MBTA is generally to take "all necessary steps to maximize nontransportation revenues . . . before implementing fare increases." G. L. c. 161A, § 11. The MBTA is required annually to balance its anticipated operating and debt expenses with its anticipated revenue sources. See G. L. c. 161A, § 20.[11] Revenue raised through advertisements is statutorily integrated with the MBTA's ability to provide mass transportation services, its essential function. Interfering with its ability to raise revenue, as the zoning ordinances would, would interfere with action that is related to the MBTA's essential function.

This interference would have more than a negligible effect. The parties have agreed that, despite its best efforts, the MBTA incurred a deficit of $7.2 million in fiscal year 2006 and expects to incur a deficit of $4.7 million in fiscal year 2007. Meanwhile, the parties also agree that "Somerville's attempt to compel compliance with [its zoning regulations] and the likely issuance of a cease and desist order by Somerville and the possible imposition of fines and penalties if Clear Channel and/or the MBTA proceed with the erection of the Somerville Signs are . . . frustrating the MBTA's . . . ability to generate revenue from those signs." The parties further agree that the "enforcement of the Cease and Desist Order issued to the MBTA by Melrose with respect to the Melrose Signs, and the possible imposition of fines and penalties if the MBTA does not comply with that Order, would . . . frustrate the MBTA's ability to generate revenue from those signs." The Somerville signs, once erected and operating, are expected to generate at least $132,500 in revenue for the MBTA each year. The parties did not state how much the advertisements in Melrose are expected to gener-

---

[11]General Laws c. 161A, § 20, provides in relevant part:

"If, during the fiscal year, the authority projects that total revenues for the fiscal year will be insufficient to meet total expenses, the authority shall take immediate steps to increase revenues or decrease expenses, other than debt service payments or other payments due under such financing obligations, such that a deficit will not occur in the following fiscal year . . . ."

ate, but the MBTA's agreement with Titan for advertising in and on MBTA facilities — an agreement encompassing the Melrose advertisements — currently generates over $750,000 per year in revenue for the MBTA. In light of the undisputed facts, we cannot conclude that the effects of the zoning regulations in this case are so small as to be negligible.[12]

For these reasons, we conclude that, because the regulation of commercial advertising in or on MBTA facilities through municipal zoning ordinances would have more than a negligible effect on actions reasonably related to the MBTA's ability to carry out its essential government function, the MBTA is exempt from such regulation.[13] Because of the conclusion we reach, there is no need to decide the question of preemption. *Boston Gas Co. v. Newton*, 425 Mass. 697, 699 (1997).

There is no merit to the cities' claim that the board should exercise jurisdiction over the Melrose advertisements on the grounds that the board may adopt regulations for control of advertisements on common carriers and the MBTA allegedly is a common carrier. See G. L. c. 93, §§ 29-32. The statutory definition of "common carrier" typically applies "only to private or moneyed corporations and not to public or municipal corporations or quasi corporations." *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 329 Mass. 243, 250 (1952), quoting *O'Donnell* v. *North Attleborough*, 212 Mass. 243, 245-246 (1912). The MBTA, as a public corporation, generally is not considered a "common carrier." One exception to this general rule is that the MBTA is treated as a common carrier for purposes of tort liability because its

---

[12]To comply with the zoning ordinances, the MBTA would have to eliminate signs or substantially reduce their sizes, see notes 4 & 6, *supra*, requirements that necessarily would have a negative impact on its advertising revenues.

[13]Somerville expresses concern that our decision today effectively will grant immunity to all State agencies for any of their revenue raising activities. Our opinion, however, does not reach so far.

First, the MBTA is not necessarily exempt from all regulation. See, e.g., *Boston* v. *Massachusetts Port Auth.*, *supra* at 653, 658. Second, our decision addresses only revenue from advertising on MBTA facilities, an activity that the Legislature expressly has authorized. See G. L. c. 161A, § 3 (*n*). Third, there is a reasonable relation between advertising revenue and the MBTA's essential functions based in part on specific terms of the statutory scheme under which the MBTA operates. G. L. c. 161A, § 20.

enabling statute expressly provides that the MBTA "shall be liable . . . for personal injury and for death and for damages to property in the same manner as though it were a street railway company." G. L. c. 161A, § 38. See, e.g., *Magaw* v. *Massachusetts Bay Transp. Auth.*, 21 Mass. App. Ct. 129, 131 (1985). The issue in this case is not a tort as envisioned in G. L. c. 161A, § 38, and the general rule therefore will apply. The MBTA is not here considered a common carrier.

Melrose next argues that the board has jurisdiction over the advertisements because the board's regulations provide that no authority, agency, or governmental unit shall erect or maintain a sign unless the board has issued a permit. 711 Code Mass. Regs. §§ 3.01-3.02 (2006). General Laws c. 93, § 29, empowers the board to enact rules and regulations. 711 Code Mass. Regs. §§ 3.00 (2006). That statute authorizes the board to make rules and regulations over advertisements that are "on public ways or on private property." G. L. c. 93, § 29. The board itself has concluded that the MBTA property in Melrose is neither a public way nor a private facility and the board therefore does not have authority to regulate the advertisements on this property. See *White Dove, Inc.* v. *Director of the Div. of Marine Fisheries*, 380 Mass. 471, 477 (1980) ("there is a presumption that the regulation does not exceed the statute which is as strong as the presumption that a statute squares with the Constitution"). We agree.

Somerville contends that the board is authorized only to issue permits in accordance with local zoning regulations and that the board therefore should not have issued a permit that allegedly did not comply with those regulations. In its argument, Somerville relies on G. L. c. 93D, § 3, and G. L. c. 93, § 29. Our analysis of the MBTA's exemption from local zoning regulation applies equally to G. L. c. 93, § 29, which provides that cities may create zoning regulations. Furthermore, the board is authorized to issue permits for advertisements that "comply with *applicable* ordinances and by-laws" (emphasis added). G. L. c. 93D, § 3. The local zoning ordinances are not "applicable" because the MBTA's enabling statute exempts the MBTA from those ordinances. Where the MBTA is exempt from local zoning ordinances, the board did not err by issuing permits that did not comply with those ordinances.

For the foregoing reasons, we conclude that the judgment should be affirmed.

*So ordered.*