453 Mass. 495 (2009) 495

Middlesex Retirement System, LLC *v.* Board of Assessors of Billerica.

MIDDLESEX RETIREMENT SYSTEM, LLC *vs.* BOARD OF
ASSESSORS OF BILLERICA.

Suffolk. February 3, 2009. - March 31, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Administrative Law,* Judicial review, Substantial evidence. *Taxation,* Judicial
review; Real estate tax: exemption; Personal property tax: exemption.
*Corporation,* Corporate disregard.

The Appellate Tax Board properly upheld real property assessments made by
a local board of assessors against a limited liability company wholly
owned and operated by a regional retirement system, a government entity
organized under G. L. c. 34B, § 19, where, although the real property of a
regional retirement system is exempt from taxation under G. L. c. 59, § 5,
Second, the real property in question was owned not by the regional retire-
ment system but by the limited liability company (whose stated purposes,
structure, and actual activities were purely business in nature, and thus did
not warrant its being treated as an instrumentality of the Commonwealth),
and subject to taxation accordingly. [498-504]
The Appellate Tax Board (board) erred in upholding personal property assess-
ments made by a local board of assessors against a limited liability company
wholly owned and operated by a regional retirement system, a government
entity organized under G. L. c. 34B, § 19, where the case stated before the
board unequivocally demonstrated that the limited liability company had
no personal property and that the regional retirement system had acquired
the subject personal property, which was exempt from taxation under G. L.
c. 59, § 5, Second, as property belonging to an instrumentality of the
Commonwealth. [504-505]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stephen W. DeCourcey* (*John M. Lynch* with him) for the
taxpayer.

*Patrick J. Costello* for board of assessors of Billerica.

SPINA, J. In a formal procedure under G. L. c. 58A, § 7, and
G. L. c. 59, §§ 64 and 65, the Appellate Tax Board (board)
upheld real and personal property assessments by the board of

assessors of Billerica (assessors) against Middlesex Retirement System, LLC (LLC), for fiscal years 2004 through 2006. LLC is a limited liability company organized under the laws of Delaware, and is wholly owned and operated by the Middlesex Retirement System (MRS), a government entity organized under G. L. c. 34B, § 19. LLC appealed to the Appeals Court, and we transferred the case here on our own motion. The sole issue before us, as before the board, is whether the property assessed is exempt from taxation on the ground that it belongs to an instrumentality of the Commonwealth, namely, MRS. We conclude that the real property tax was assessed properly against LLC, but that the personal property tax was not because LLC was not the owner of the personal property in question.

1. *Background.* The case was submitted to the board on a statement of agreed facts and a supplemental statement of agreed facts. Rule 1.23 of the Rules of the Appellate Tax Board (2009). We summarize those facts.

MRS is a regional retirement system created and managed by a retirement board pursuant to G. L. c. 34B, § 19 (*a*) and (*b*), for the purpose of continuing the operation of the former Middlesex County retirement system following the abolition of Middlesex County government. St. 1997, c. 48. MRS administers the defined benefit retirement plan for the members-employees, retirees, and beneficiaries of the thirty-one municipalities (including Billerica) and thirty-nine other governmental subdivisions located within the geographical boundaries of Middlesex County. It is enabled and governed by applicable provisions of G. L. c. 32 and c. 34B, see G. L. c. 34B, § 19 (*l*), and it is subject to the general oversight of the Public Employee Retirement Administration Commission. See G. L. c. 7, § 50; G. L. c. 32, § 21.

The Legislature designated county treasurers of each abolished county to serve as the chairperson of the corresponding newly created regional retirement system until December 31, 2002. See G. L. c. 34B, § 19 (*b*) (1). The Legislature also authorized a county treasurer to continue to occupy at no cost the space occupied by such treasurer on July 11, 1997. St. 1997, c. 48, § 27. For MRS, that meant it could occupy at no cost, until December 31, 2002, the space occupied by its predecessor, the Middlesex County retirement system, which operated within the office of

the treasurer of Middlesex County in the Middlesex County Court House.

Anticipating the need to relocate after December 31, 2002, MRS entered into a purchase and sale agreement on July 29, 2002, to acquire land and a 62,000 square foot, two-story building at 25 Linnell Circle in Billerica for $6,000,000.[1] On September 18, 2002, MRS created LLC, a limited liability company under the laws of the State of Delaware. On September 25, 2002, LLC registered as a foreign limited liability company with the Secretary of the Commonwealth, pursuant to G. L. c. 156C, § 48. MRS was and continues to be the manager and sole member of LLC. See Del. Code Ann. tit. 6, § 18-101(10), (11) (2005 & Supp. 2008) (definitions of "[m]anager" and "[m]ember"). Also on September 25, 2002, in consideration of $6,000,000, LLC acquired title to the real property at 25 Linnell Circle, conformably with its operating agreement. See Del. Code Ann. tit. 6, § 18-101(7) (Supp. 2008) (definition of "[l]imited liability company agreement").

MRS maintains its offices and conducts its activities on a portion of the second floor of the real property. Other portions of the real property are occupied by a commercial tenant and a nonprofit organization. According to the parties, approximately 22.5% of the real property was then vacant, and LLC had been actively seeking a tenant for that space. The real property was assessed to LLC for fiscal years 2004, 2005, and 2006. Those assessments, but not the valuations, are before us in this appeal.

The assessors estimated the value of the furniture and fixtures in MRS's office at $750,000 for fiscal year 2004 and assessed a personal property tax thereon. That tax was paid. It is not clear on this record to which entity the tax was assessed, or who paid the tax, but we infer it was LLC. That assessment is not before us. MRS thereafter notified the assessors that it was the owner of the furniture and fixtures in question, not LLC, and that the property was therefore tax exempt. MRS contends in the alternative that the valuation for fiscal year 2004 was too high. The assessors responded by letter dated August 20, 2004, with a request

---

[1]A regional retirement system is authorized to lease or purchase property, including real property, "necessary for the proper administration and transaction of [its] business." G. L. c. 34B, § 19 (*e*).

that MRS complete a State Tax Form 2 (form of list) and describe each item of personal property it claimed it owned. See G. L. c. 59, § 29. The assessors further indicated that they would accept, in lieu of the statutory form of list, MRS's accounting documentation specifying the "cost and depreciation of each item." The assessors also expressed a willingness to consider a personal property tax exemption if ownership could be documented, or a reevaluation of the property, as appropriate. MRS did not complete and return the form of list. It provided the assessors with relevant portions of accounting statements and annual reports for itself and LLC, but the information described the furniture and fixtures in the aggregate, not individually, as requested by the assessors.

The records sent by MRS indicate that it owned no real estate, but that it acquired furniture and fixtures in the amount of $262,601.80 in 2002 for the operation of its offices at the real property. An additional $271,015 was spent acquiring furniture and fixtures in 2003. A value of $533,617 for furniture and fixtures is shown on MRS annual reports for calendar years 2003 and 2004. In its annual report for calendar years 2003 and 2004, LLC showed that it owned the real property, but that it owned no furniture or fixtures. Because MRS failed to provide information in the form requested, the assessors estimated the value of the personal property. They revalued the property at $675,000 for fiscal year 2005 and fiscal year 2006 and assessed a personal property tax against LLC. See G. L. c. 59, §§ 29-37. Those assessments, but not the valuations, are before us in this appeal.

2. *Discussion.* a. *Real property.* The board ruled that (1) a regional retirement system is not entitled to an exemption for its real property under G. L. c. 59, § 5, Second,[2] and (2) even if it were entitled to such an exemption, the real property here is not exempt from taxation because it is not owned by a regional retirement system.

We review decisions of the board for errors of law. *Commissioner of Revenue* v. *Jafra Cosmetics, Inc.*, 433 Mass. 255, 259 (2001). Findings of fact by the board must be supported by

[2]General Laws c. 59, § 5, states in relevant part: "The following property shall be exempt from taxation . . . Second, Property of the commonwealth . . . ."

substantial evidence. *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 749 (1975). Where, as here, the case was submitted to the board on a statement of agreed facts and a supplemental "statement of agreed facts [that] contain[] all the material facts upon which the rights of the parties are to be determined in accordance with law," it constitutes a "case stated." *Caissie* v. *Cambridge*, 317 Mass. 346, 347 (1944). As such, "[t]he inferences drawn by the [board] from the facts stated are not binding upon us, and questions of fact as well as questions of law are open for review" on appeal. *Id.* See *Massachusetts Bay Transp. Auth.* v. *Somerville*, 451 Mass. 80, 84 (2008).

The board first ruled that real property of a regional retirement system is not exempt from taxation. It reasoned that because G. L. c. 59, § 5, Eighth, specifically exempts "[p]ersonal property of any retirement association exempted by [G. L. c. 32, § 19]," and because retirement associations are mentioned nowhere else in § 5, the Legislature intended to exempt only "certain personal property of a retirement system," and not its real property. This ruling is error. In *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193, 194 (1874), this court held that, notwithstanding the absence of any specific statutory exemption from taxation for county-owned land, such land is exempt from taxation if it is owned by an "instrumentalit[y]" of the Commonwealth and devoted to public purposes. "[C]ourts infer that it is not the intention of the Legislature to tax [county property used for public purposes] in the absence of any express declaration that it should be taxed." *Essex County* v. *Salem*, 153 Mass. 141, 142 (1891). MRS, the governmental successor to a component of the former Middlesex County government, presently is an instrumentality of the Commonwealth. As such, where the Legislature has not expressly declared that it should be taxed, the real property of MRS must be deemed exempt from taxation under G. L. c. 59, § 5, Second.

General Laws c. 59, § 5, Eighth, which exempts "[p]ersonal property of any retirement association exempted by [G. L. c. 32, § 19,]" is not to the contrary. That clause is not concerned with the property (furniture and fixtures) of the retirement system used to carry out its purposes. Rather, it is concerned with the property

in which members, retirees, and beneficiaries of a retirement system have a beneficial interest, namely, investment funds, or personal property in which such funds have been invested.[3] As such, the property described in § 5, Eighth, is not property of the Commonwealth or any of its instrumentalities. It is property held for the benefit of retirement system members, retirees, and beneficiaries.

The board also ruled that even if a regional retirement system is entitled to an exemption for its real property, the property here is not owned by a regional retirement system but by LLC, which is not an instrumentality of government, and the taxes were properly assessed to LLC, as owner. See G. L. c. 59, § 11. This ruling is correct. Although MRS could have taken title to the real property in its own name, it chose not to do so for reasons not contained in the record. Instead, MRS created LLC, a limited liability company under Delaware law, and it caused title to the real property to be placed in the name of LLC. Not only does MRS not hold title to the real property, it has no interest in it. Under Delaware law, "[a] limited liability company interest is personal property. A member has no interest in specific limited liability company property." Del. Code Ann. tit. 6, § 18-701 (2005). Under the business structure selected by MRS to hold title to the real property, the real property is not the property of the Commonwealth or any of its instrumentalities. It is the property of LLC, and subject to taxation accordingly. See G. L. c. 59, § 11 (taxes on real estate shall be assessed to record owner).

LLC urges us to look to the substance, rather than the form, of its relationship with MRS and hold that the real property is owned by MRS for purposes of G. L. c. 59, § 5, Second. Essentially, LLC contends that it should be treated as an instrumentality of the Commonwealth or, alternatively, as the alter ego of MRS. The cases on which LLC relies, *Brown, Rudnick, Freed & Gesmer* v. *Assessors of Boston*, 389 Mass. 298, 302-

---

[3] General Laws c. 32, § 19, states in relevant part: "The funds of such system established under [G. L. c. 231, §§ 1-28], so far as they are invested in personal property, shall be exempt from taxation. The rights of a member . . . in the funds of any system established under [G. L. c. 32, §§ 1-28], shall be exempt from taxation . . . ."

303 (1983) (*Brown, Rudnick*), and *H-C Health Servs., Inc.* v. *Assessors of S. Hadley*, 42 Mass. App. Ct. 596 (1997), do not support its claim.

We first address the argument that LLC should be treated as an instrumentality of the Commonwealth. In the *Brown, Rudnick* case we affirmed so much of a decision of the board that concluded that a domestic business corporation, created by and solely owned by a partnership for the stated purpose of engaging in the business of leasing personal property, was not entitled to the exemption for personal property under G. L. c. 59, § 5, Sixteenth (2),[4] because it was not a domestic business corporation as that term is used in the statute. We looked to the declared purposes of and the actual work performed by the corporation to determine whether it was in fact operated for purposes that qualified for the exemption. *Id.* at 303. The stated purpose of the corporation qualified for exemption under G. L. c. 59, § 5, Sixteenth (2). However, the corporation leased personal property only to the partnership, and it acquired new property solely to meet the needs of the partnership. The partnership claimed to own no personal property whatsoever, and it was not entitled to any exemption for personal property under § 5. The board found, and we held, that the corporation was not an entity that was operated for gain or profit. Rather, its sole function was to shelter the partnership from personal property tax liability, which is not "business" as that term is used in § 5, Sixteenth (2). Thus, the claim for the exemption failed. *Id.* at 304-306.

In *H-C Health Servs., Inc.* v. *Assessors of S. Hadley, supra*, assessors challenged a decision of the board that concluded that two corporations organized under G. L. c. 156B qualified for the exemption under G. L. c. 59, § 5, Third, for personal property owned by a charitable organization notwithstanding the fact that they were not organized under G. L. c. 180 as nonprofit corporations. The primary purpose of the G. L. c. 156B corporations, as stated in their articles of organization, was to "operate, and provide services to, residential or day-care facilities for elderly or infirm persons." *Id.* at 597. Their articles of organization

---

[4]General Laws c. 59, § 5, Sixteenth (2), states: "In the case of (*a*) domestic business corporation . . . all property owned by such corporation other than the following" shall be exempted from taxation.

further provided that each corporation would apply for tax exempt status "as a charitable corporation under the provisions of § 501(c)(3) of the Internal Revenue Code of 1954," that no part of its assets or earnings would inure to the private benefit of any person or entity, and that on liquidation or dissolution its assets shall be distributed only to a § 501(c)(3) corporation. *Id.* at 597-598. Each corporation in fact had been granted § 501(c)(3) status by the Internal Revenue Service, as well as a sales tax exemption certificate from the Department of Revenue. Both corporations operated nursing homes predominantly for Medicaid and Medicare patients. Based on the declared purposes of the corporations and their actual operations, and based on the absence of any requirement in the statute that a taxpayer be incorporated under G. L. c. 180 to qualify as a charitable organization, they qualified as charitable organizations under G. L. c. 59, § 5, Third. *Id.* at 598.

We turn to LLC to determine if its declared purposes and its actual work warrant treatment as an instrumentality of the Commonwealth. The purposes of LLC, as stated in its operating agreement, are:

> "(i) to acquire, own, improve, manage, operate, maintain, lease, sell and otherwise deal with the real property and any improvements thereon in Billerica, Massachusetts known and numbered as 25 Linnell Circle, and (ii) to engage in all related activities and businesses arising from or incidental to any of the foregoing or relating thereto or necessary, desirable, advisable, convenient or appropriate in connection therewith as the Member [MRS] may determine."

These purposes are purely business in nature. LLC does not purport to undertake any governmental function of MRS.[5] Although it performs a function that MRS is authorized to perform, namely, owning real property, that is not an inherently governmental function. There is nothing in the record to suggest that the landlord-tenant relationship between LLC and MRS is any different from that of any other landlord-tenant relationship.

---

[5]We express no opinion whether MRS could even empower it so to act.

MRS could have leased space from someone else, and that relationship ostensibly would not appear materially different from its landlord-tenant relationship with LLC. As stated above, the record is silent as to any reason of MRS for creating LLC,[6] and all stated purposes of LLC in this record are business purposes.

Turning to the actual workings of LLC, we see an entity that actually is engaged in the business of owning and managing commercial real estate. As stipulated, MRS occupied approximately 23.4% of the building space, 51.5% was leased to private tenants, and LLC was actively seeking a tenant to occupy the remainder of the building. The record indicates that LLC held $190,492 in cash at the end of calendar year 2002, with $55,857 in receivables, and $146,752 due from MRS. By the end of calendar year 2003, LLC held cash in the amount of $92,436, and it had $114,048 in receivables. LLC functions as a business enterprise that is distinct from MRS. It does not perform any governmental functions.

Applying the functional approach followed in the *Brown, Rudnick* and *H-C Health Servs., Inc.*, cases, we have focused on the stated purposes and actual work of LLC, and conclude that LLC is not an instrumentality of government, but a conventional business. Its declared purposes are business purposes, it is not structured in any respect to undertake a function of government, and its actual activities are purely business in nature.

Finally, we turn to the question whether the real property should be treated as that of MRS for purposes of G. L. c. 59, § 5, Second. This argument effectively suggests that LLC should be treated as the alter ego of MRS and that we should disregard the separate entities involved. There are two problems with this argument. First, common ownership and common management, alone, generally will not permit disregard of the formal barriers between separate legal entities. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). Second, "[t]he doctrine of corporate disregard is an equitable tool that authorizes courts, in rare situations, to ignore corporate

---

[6]If, for example, MRS created LLC as a shield against claims of premises liability, it may not properly ask to lower that shield to avoid the tax consequences of its decision.

formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice. . . . In certain situations, the doctrine may also properly be used to carry out legislative intent and to avoid evasion of statutes" (citation omitted). *Attorney Gen.* v. *M.C.K., Inc.*, 432 Mass. 546, 555 (2000). See *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 625-626 (1990). Although the doctrine usually applies to corporations, we see no reason why it should not also apply to limited liability companies. LLC does not argue that any of the relevant factors (other than common interest and control) applicable to corporate disregard analysis, see *Attorney Gen.* v. *M.C.K., Inc.*, *supra* at 555 n.19, are present in this case. Thus, its claim of alter ego necessarily fails. The board properly noted in its decision that this argument is not compelling when invoked by an entity seeking to disregard its own business structure. We agree.

For the foregoing reasons, we affirm the portion of the board's decision that upholds the assessment of the real property taxes against LLC.

b. *Personal property.* The personal property tax for furniture and fixtures was assessed against LLC because MRS failed to comply with the request of the assessors to complete the statutory form or, alternatively, to provide accounting documentation specifying the "cost and depreciation of each item." The board upheld the decision of the assessors on grounds that LLC "failed to meet its burden of proving that it owned the subject personal property" and, further, that LLC "fail[ed] to offer such testimony or supporting documentation to prove its ownership of the subject personal property." The board also concluded that personal property of a retirement system is not exempt.

The board's ruling that a retirement system's personal property is not exempt from local taxation is error, for reasons previously discussed. See *Essex County* v. *Salem*, 153 Mass. 141, 142 (1891); *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193, 194 (1874).

With respect to LLC's failure to meet its burden of proof to show that it owned the subject personal property, the board appears to have placed an incorrect burden on LLC. While MRS may not have complied with the request of the assessors to show that it owned the property, the question before us is

whether LLC owned the property, and it consistently has claimed that it did not.

The parties stipulated that MRS acquired the subject personal property. The statements of agreed facts also show that MRS carries the personal property on its books as capital assets being depreciated, whereas LLC shows no personal property in its annual reports. LLC shows ownership of only the land and the building. The "case stated" before the board unequivocally demonstrates that LLC has no personal property. Indeed, there is no evidence whatsoever that LLC owns any personal property. It is not clear on this record whether LLC ever filed a statutory form of list stating that it had no personal property. However, where it had no personal property, it had no obligation to file the form. See *Boston & Albany R.R.* v. *Boston*, 275 Mass. 133, 135 (1931). LLC is entitled, as a matter of law, to an abatement of the entire personal property tax assessed against it for fiscal years 2005 and 2006.

3. *Conclusion.* For the foregoing reasons, the decision of the board as to the real property assessment is affirmed; the decision of the board as to the personal property assessment is reversed, and the matter is remanded to the board with instructions to enter an order granting the abatement for personal property taxes assessed for fiscal years 2005 and 2006.

*So ordered.*