BRIDGEWATER STATE UNIVERSITY FOUNDATION[1] *vs.* BOARD OF
ASSESSORS OF BRIDGEWATER.

Suffolk. May 8, 2012. - August 8, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Taxation,* Real estate tax: charity, exemption, assessment, Exemption, Asses-
sors, Judicial review, Appellate Tax Board: findings. *Administrative Law,*
Judicial review. *Statute,* Construction. *Charity.*

The Appellate Tax Board properly concluded that six properties owned by a
public charitable foundation established pursuant to G. L. c. 15A, § 37, but
used in whole or in part by a State university were exempt from real estate
taxation under G. L. c. 59, § 5, Third. [157-161]

APPEAL from a decision of the Appellate Tax Board.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Michael R. Coppock* for the taxpayer.

*Mary C. Butler* for board of assessors of Bridgewater.

*Deirdre Heatwole, Kenneth A. Tashjy, Richard M. Bluestein,
Janet S. Lundberg,* & *Jonathan A. Scharf,* for University of
Massachusetts & others, amici curiae, submitted a brief.

BOTSFORD, J. A charitable organization is entitled to an exemp-
tion from local property taxes under G. L. c. 59, § 5, Third, for
real property owned and occupied by the organization. In this
case, we consider the exemption in the context of a public
charitable foundation that operates exclusively for the benefit of
a public university, and owns properties that are occupied and
used in part by the foundation but in larger part by the public
university. The Appellate Tax Board (board) decided that the
Bridgewater State University Foundation (foundation) was
entitled to the charitable exemption; on appeal by the board of

---

[1]Bridgewater State College is now a university. St. 2010, c. 189. Accord-
ingly, the foundation changed its name from the Bridgewater State College
Foundation to the Bridgewater State University Foundation.

assessors of the town of Bridgewater (assessors), the Appeals Court reversed. See *Assessors of Bridgewater* v. *Bridgewater State Univ. Found.*, 79 Mass. App. Ct. 637 (2011) (*Bridgewater State Univ. Found.*). We granted the foundation's application for further appellate review.[2] We conclude that the foundation is entitled to the exemption. Accordingly, we affirm the decision of the board.

1. *Background.* The facts are set out in the Appeals Court's opinion. See *id.* at 638-639. We summarize them here.[3] The foundation is a public charitable trust, and it is "organized and operate[s] exclusively for the benefit of" Bridgewater State University (university) pursuant to G. L. c. 15A, § 37.[4] The foundation was established in 1984, and has qualified as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code. The university is an institution of public higher education. See G. L. c. 15A, § 5. There is an operating agreement between the university and the foundation with goals and policies the university certifies, in accordance with c. 15A, § 37, that the foundation is "organized and operated exclusively for the benefit of the [university]." In the agreement, the university certifies that the foundation is operating "in a manner consistent with" the university's goals and policies; the agreement further provides that the foundation "shall expend and apply [the monies and other assets it holds] solely for the benefit of the [university] and not otherwise."

The foundation owns three buildings and three undeveloped

---

[2]We acknowledge the amicus brief submitted by the University of Massachusetts; the University of Massachusetts Foundation, Inc.; the Massachusetts Community College System; and the Massachusetts Charter Public School Association.

[3]The facts summarized here and in the Appeals Court's opinion are taken from a joint statement of facts submitted by the parties to the Appellate Tax Board (board), and undisputed facts set out in the board's written decision.

[4]General Laws c. 15A, § 37, concerns the establishment and operation of charitable organizations or public charitable trusts — defined as "foundation[s]" — that are "organized and operated exclusively for the benefit of an institution of public higher education" and are "certified by the board of trustees of the institution which [they] support[] [as] operating in a manner consistent with the goals and policies of the institution." G. L. c. 15A, § 37 (*a*). We understand from the statute's provisions that the purpose of these foundations is to assist public colleges and universities with fundraising. See *id.* at § 37 (*e*), (*f*).

parcels of land (collectively, properties) in the town of Bridgewater. One of the buildings is occupied in part by the foundation for its offices and in part by the university's alumni office; another houses the university's political science department; and the third is used by the university as well as the foundation for receptions and fundraising. The three undeveloped parcels are used by university students for recreation and by university student groups. None of the properties is occupied or used exclusively by the foundation. At this juncture, the foundation permits the university to occupy and use all the properties free of charge.

At issue here are property taxes assessed against each of the six properties by the assessors for fiscal year (FY) 2007 and FY 2008.[5] The foundation appealed to the board after the assessors determined that the properties were not eligible for the exemption under G. L. c. 59, § 5, Third, and denied its applications for abatement. The board found that because the university's various uses of the properties "advanced the charitable educational mission of [the university], which was the sole purpose of the [foundation's] organization and operations," "the parcels at issue were exempt under [G. L. c. 59, § 5, Third], as they were owned and occupied by a charitable organization in furtherance of its charitable purpose."

2. *Standard of review.* Decisions of the board are reviewed for errors of law. "Findings of fact by the board must be supported by substantial evidence." *Middlesex Retirement Sys., LLC* v. *Assessors of Billerica*, 453 Mass. 495, 498-499 (2009), and cases cited. While the parties dispute the Appeals Court's characterization of the matter before the board as a "case stated" (*Bridgewater State Univ. Found.*, 79 Mass. App. Ct. at 639) and how, if so, the standard of review of facts would be affected, the issue does not appear to be material to resolution of this appeal. The central issue here is one of statutory construction: what does the phrase "owned . . . *and occupied by*" (emphasis added) a charitable organization in G. L. c. 59, § 5, Third, mean? At their core, questions of statutory construction are questions of law, to be reviewed de novo. See, e.g., *Atlanticare*

---

[5]The total taxes assessed for fiscal year (FY) 2007 was $21,663.44; the total assessment for FY 2008 was $22,618.23.

463 Mass. 154 (2012)                                   157

Bridgewater State University Foundation *v.* Board of Assessors of Bridgewater.

*Med. Ctr.* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6 (2003).

3. *Discussion.* General Laws c. 59, § 5, Third, exempts from local property taxation, inter alia:

> "real estate *owned by or held in trust for a charitable organization and occupied by it or its officers for the purposes for which it is organized* or by another charitable organization or organizations or its or their officers for the purposes of such other charitable organization or organizations" (emphasis added).

The exemption provided thus is available to "a charitable organization [that] owns real estate and occupies it for its corporate purpose, or allows another charitable organization to occupy it for its purpose." *Assessors of Hamilton* v. *Iron Rail Fund of Girls Clubs of Am., Inc.*, 367 Mass. 301, 306 (1975). It is undisputed here that the six properties are owned by the foundation, and that the foundation is a charitable organization. We turn, therefore, to the interpretive issue raised: whether the foundation "occupied" the properties within the meaning of c. 59, § 5, Third, where the foundation did not itself physically occupy them (except in part), but in direct furtherance of its charitable purpose, permitted the university to use the properties to carry out the university's educational mission and goals.

The board concluded that "[o]ccupancy for the purposes of [c. 59, § 5, Third,] means use for the purpose for which the charity is organized," reasoning that "the fact that the property at issue may be inhabited or used by individuals or an entity other than [the foundation] does not defeat the claim for exemption, so long as such inhabitation or use is consistent with the purpose of the charitable organization that owns the property." The Appeals Court rejected this approach, concluding that the plain terms of c. 59, § 5, Third, "requires occupancy by the charitable organization claiming exemption . . . coupled with use for a purpose consistent with the charitable purpose of the occupying charitable organization[;] . . . the statutory requirements of occupancy by a charitable organization and use for its charitable purpose are plainly separate and conjunctive." *Bridgewater State Univ. Found.*, 79 Mass. App. Ct. at 640-641. We do

not find it necessary to choose between these conflicting views in order to resolve this case.[6]

As a general matter, "where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words," a rule that "has particular force in interpreting tax statutes." *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 674 (1997), quoting *Commissioner of Revenue* v. *AMI Woodbroke, Inc.*, 418 Mass. 92, 94 (1994). However, it is also the case that "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended to act reasonably." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). Consequently, "when a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute," including "other statutes on the same subject." *Id.* at 336, 337. In addition, we "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results." *Connors* v. *Annino*, 460 Mass. 790, 796 (2011), quoting *Canton* v. *Commissioner of the Mass. Highway Dep't*, 455 Mass. 783, 791-792 (2010).

In seeking to construe c. 59, § 5, Third, in this case, it helps to take a step back from the statute and to consider these counterfactual scenarios that furnish useful points of reference: (1) if the foundation physically occupied and used the properties in question in the manner they were used by the university in FY

___

[6]There are decisions of this court that offer some support for the broader view of the word "occupied" taken by the board, as well as the more narrow interpretation adopted by the Appeals Court. Compare, e.g., *M.I.T. Student House Inc.* v. *Assessors of Boston*, 350 Mass. 539, 541-542 (1966) (plaintiff charitable organization owned house offering room and board to "needy students" attending university, but students lived in and managed property on their own; plaintiff found to "occup[y]" house and was entitled to exemption), and *Franklin Sq. House* v. *Boston*, 188 Mass. 409, 410 (1905) (comparable), with *Charlesbank Homes* v. *Boston*, 218 Mass. 14, 15-16 (1914) (charitable organization owned apartment building whose units it rented out to tenants in furtherance of charitable purpose of providing "wholesome and sanitary homes for working people and people of small means at moderate cost"; plaintiff not entitled to exemption because "there must be an actual occupation by the corporation or its officers before the purpose of that occupation can be considered"). On its facts, this case does not fit particularly well into either line of decisions just cited.

2007 and FY 2008, it would qualify for the exemption that clause Third provides; (2) if the university directly owned the properties and used them for the same purposes that it did in FY 2007 and FY 2008, it would be entitled to tax exemption under c. 59, § 5, Second,[7] because, as one of the nine State universities, see G. L. c. 15A, § 5, the university is an agency of the Commonwealth, see, e.g., *McNamara* v. *Honeyman*, 406 Mass. 43, 47 (1989); Shocrylas *vs.* Worcester State College, U.S. Dist. Ct., No. 06-40278-FDS, slip op. at 5 (D. Mass. Oct. 29, 2007);[8] and (3) if the university were itself a charitable organization and using the foundation's properties in the same manner that the university used them, the foundation would be entitled to tax exemption because the properties would "occupied . . . by another charitable organization . . . for the purposes of such other charitable organization." G. L. c. 59, § 5, Third.

We have discussed that, as required by G. L. c. 15A, § 37, the foundation is organized and operates for the exclusive benefit of the university, and is certified by the university to be operating consistently with the university's goals and policies.[9] Moreover, there is no question that the uses to which the six properties were put during the taxable years conform to these

[7]General Laws c. 59, § 5, Second, exempts from taxation "[p]roperty of the commonwealth," with exceptions not relevant here.

[8]The Appeals Court agreed with these two points. See *Bridgewater State Univ. Found.*, 79 Mass. App. Ct. at 641 ("We recognize that our conclusion [that the foundation does not benefit from the tax exemption] has the effect of subjecting to taxation properties that would be exempt if occupied by the charitable organization that owns them, or if owned by the State university that occupies them").

[9]We have not found legislative history that specifically relates to the enactment of G. L. c. 15A, § 37, inserted by St. 1992, c. 133, § 211, through an outside section to the State's general appropriations bill, but the words of the statute itself reflect its purpose of providing a means of assisting public universities and other "institution[s] of public higher education" with fundraising in particular. See note 4, *supra*. In this regard, the amici state that as tax-exempt entities that are not State agencies or subdivisions of the Commonwealth, see G. L. c. 15A, § 37 (*h*), foundations such as the one here entitle donors making gifts to them to greater tax benefits under Federal law than the donors would receive by making gifts directly to educational institutions; and such foundations also are able to ensure that real property donated for the specific benefit of such institutions does not revert to the Commonwealth for general use.

requirements, because use of these properties by the university to carry out its mission and goals is by definition fully congruent with the purpose for which the foundation was organized. In view of this, and keeping in mind the reference points set out in the previous paragraph, a literal construction of c. 59, § 5, Third, to mean that the properties owned by the foundation yet occupied by the university do not qualify for the exemption would lead to consequences that are "absurd or unreasonable." See *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. at 336. We will not adopt such a reading. Rather, we construe c. 59, § 5, Third, to apply to properties that are owned by a foundation established pursuant to G. L. c. 15A, § 37, and used by its affiliated public institution of higher education, and therefore to apply in this case.

This interpretation seems more in concert with the general intent of the exemption for property owned by charitable organizations in c. 59, § 5, Third. See *Mary Ann Morse Healthcare Corp.* v. *Assessors of Framingham*, 74 Mass. App. Ct. 701, 706 (2009) (rejecting construction of G. L. c. 59, § 5, Third, that would "penaliz[e] [the charitable organization taxpayer] for performing the charitable function that constitutes its mission").[10] The construction also seems more in harmony with the Legislature's manifest intent in G. L. c. 15A, § 37, of providing for the establishment of foundations as a means of advancing the missions of affiliated institutions of public higher education. See *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. at 336-337 ("[W]hen a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute . . . . Such intent may be derived in part from other statutes on the same subject"). Perhaps most importantly, the interpretation seems the most reasonable and sensible in the circumstances. Cf. *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 348 (1978)

---

[10]In somewhat different contexts, this court and the Appeals Court have followed a functional approach in deciding whether taxpayers qualify for the charitable organization exemption in G. L. c. 59, § 5, Third. See, e.g., *Assessors of Boston* v. *Vincent Club*, 351 Mass. 10, 12-13 (1966) (considering whether organization functionally qualified as charitable organization for purposes of exemption in c. 59, § 5, Third); *H-C Health Servs., Inc.* v. *Assessors of S. Hadley*, 42 Mass. App. Ct. 596, 598-599 (1997) (same). Our approach in this case is essentially functional as well.

(where strict, literal interpretation of workers' compensation statute in accord with usually applicable rule of statutory interpretation "is seen . . . to lead to an awkward and even intolerable result, [it will be] abandoned for a more liberal or more encompassing approach").

4. *Conclusion.* For the reasons discussed, we affirm the decision of the Appellate Tax Board.

*So ordered.*