GEORGE A. MCNEILL vs. BOARD OF ASSESSORS OF WEST
SPRINGFIELD.

Suffolk. November 4, 1985. — January 21, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Real estate tax: assessment, classification of property, nursing
home. *Nursing Home.*

The Appellate Tax Board did not err in determining that a nursing home
should be classified as commercial, and not residential, property pursuant
to G. L. c. 59, § 2A (*b*), for purposes of setting the amount of the
owner's real estate tax. [606-609]

APPEAL from a decision of the Appellate Tax Board.

*Daniel C. Sacco* for the taxpayer.

*James T. Donahue,* Town Counsel, for the Board of Asses-
sors of West Springfield.

ABRAMS, J. The sole issue before us is whether the Appellate
Tax Board (board) erred in its determination that a nursing
home was classified properly as commercial property. See
G. L. c. 59, § 2A (*b*).[1] The taxpayer, the owner of Riverdale

[1] The relevant portions of G. L. c. 59, § 2A (*b*) (1984 ed.), provide in
part: "The assessors . . . shall classify such real property according to the
following uses: —

"'Class one, residential,' property used or held for human habitation
containing one or more dwelling units including rooming houses with
facilities designed and used for living, sleeping, cooking and eating on a
non-transient basis. Such property includes accessory land, buildings or
improvements incidental to such habitation and used exclusively by the
residents of the property or their guests. Such property shall include: (*i*)
land that is situated in a residential zone and has been subdivided into
residential lots; and (*ii*) land used for the purpose of a mobile home park,
as defined in section thirty-two F of chapter one hundred and forty. Such
property shall not include a hotel or motel. Such property may be exempt
from taxation under those provisions of law.
"  . . . .
"'Class three, commercial,' property used or held for use for business
purposes and not specifically includible in another class, including but not

Gardens Nursing Home (nursing home), claims that the appropriate classification is residential, not commercial. He appeals from the board's decision. See G. L. c. 58A, § 13 (1984 ed.).

The nursing home was assessed property taxes for fiscal years 1982 and 1983 by the West Springfield board of assessors at the commercial (higher) rate.[2] In doing so, the assessors applied the guidelines prepared and issued by the Commissioner of Revenue (Commissioner) which classified nursing homes as commercial property.[3] After paying the tax for FY 1982, the taxpayer applied for an abatement which was denied by the assessors.[4] Application for abatement for FY 1983 was also denied. The taxpayer filed appeals from both denials with the Appellate Tax Board pursuant to G. L. c. 59, §§ 64 and 65 (1984 ed.).[5] A decision in favor of the assessors was entered by the board on June 1, 1984, and findings of fact and report were entered on December 27, 1984. We affirm the decision of the board.

We summarize the facts as follows. The property is a one-story building located on 4.06 acres in a "Business A" zone in

limited to any commercial, business, retail, trade, service, recreational, agricultural, artistic, sporting, fraternal, governmental, educational, medical, or religious enterprise, for non-profit purposes. Such property may be expressly exempt from taxation under other provisions of this chapter."

[2] For FY 1982, the commercial rate was $31.30 per $1,000 valuation and the residential rate was $21.32 per $1,000 valuation. For FY 1983, the commercial and residential rates were $31.08 and $21.30, respectively.

[3] The directives, entitled "Guidelines for Classification and Taxation of Property According to Use, Property Type Classification Codes," were issued in 1980 and 1981. For each of those years, nursing homes are classified under the heading of "commercial" and are coded as No. 304 with the following characterization: "Includes property designed for minimal care with or without medical facilities."

[4] An abatement was granted for the portion of the tax attributable to a single-family dwelling on the property. That abatement is not an issue before us. No abatement was granted for the portion of tax attributable to the nursing home. The valuation of the nursing home also is not at issue, only its classification is contested.

[5] The appeal for FY 1982 was made under the informal procedure. The appeal for FY 1983 was made under the formal procedure. Because the only issue before us is a question of law, the distinction is not material.

West Springfield.[6] The main floor consists of two living rooms, two smoking rooms, three lounges, one examining room, one physical therapy room, three nurses' stations and sixty-six bedrooms. The bedrooms are shared by two persons and are equipped with intercom systems connected to the nurses' stations. As of January 1, 1981, there were 116 residents in the nursing home with an average stay of 2.7 years. As of January 1, 1982, there were 121 residents in the nursing home with an average stay of 2.8 years. The home is licensed to have forty-one Level Two beds and eighty-four Level Three beds requiring a skilled level of care and an intermediate level of care, respectively.[7] During 1981 and 1982, the nursing home employed approximately 115 persons,[8] and grossed $1.5 million in 1981 and $1.65 million in 1982. The principal source of payment of the costs charged by the nursing home for more than one-half the residents was either Medicaid or Medicare. Between one-half and one-third of the remaining residents had at least partial costs reimbursed by a third-party payor.

The board found that the residents of the nursing home are individuals who should not live alone (because of infirmities associated with illness or advanced age) and who do not have a relative, friend, or the necessary help to care for them. Care and treatment and administering of medications are provided on a twenty-four hour basis. Other services include care of daily needs such as washing, bathing, feeding, changing clothes, and walking.

The thrust of the taxpayer's argument is that the nursing home falls within the statutory definition of residential property

---

[6] The taxpayer characterizes part of the surrounding neighborhood as "residential."

[7] There are four levels of care which nursing homes may be licensed to provide: "Level One" requires the highest level of care and "Level Four," requiring no medical care, is termed "resident care." 105 Code Mass. Regs. 150.001 (B) (1978).

[8] These were characterized as follows: fifteen to twenty nurses; thirty to fifty nurse's aides; fifteen maintenance personnel; four to six laundry personnel; eight to thirteen kitchen aides, including cooks, dishwashers, and servers; four administrative personnel; two activities personnel; and one social worker.

because it is a facility designed for "living, sleeping, cooking and eating." Further, those living in the nursing home are nontransient residents whose "continual and extended physical presence" makes the nursing home their dwelling place.[9]

The taxpayer acknowledges that the statutory definition of residential is extremely broad and general and that the Legislature did not attempt to list, or specifically include, every type of residence. Nevertheless, he argues that if a property "fits" the generic description of a dwelling place, it must be classified as residential. The taxpayer asserts that the statute should be read as distinguishing between transient and nontransient persons. Thus, the taxpayer concludes that the fact that persons living at a nursing home are nontransient requires the board to classify nursing homes as residential. We do not agree.

Classification is part of a "comprehensive scheme" of property taxation which "permits an apportionment of the real property tax burden among commercial, industrial, open space, and residential property owners through usage classification." *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 890, 891 (1980). G. L. c. 59, § 2A (1984 ed.). The underlying rationale of classification is that the commercial and income-producing property owner pays more for local taxes because he receives more economic benefits from the community. See 8 P.J. Rohan, Real Estate Tax Appeals § 3.05[3], at 3-60 to 3-61 (1984). To ensure uniformity in classification, "[t]he Commissioner has the power to issue guidelines which comprehend 'the administration of all laws providing for the assessment and classification of property.'" *Newton* v. *Commissioner of Revenue,* 384 Mass. 115, 120 (1981). *Macioci* v. *Commissioner of Revenue,* 386 Mass. 752, 755-756 (1982). We may not substitute our judgment for that of the agency entrusted to implement the statutory scheme. See *Johnson* v. *Martignetti,* 374 Mass. 784, 791 (1978). Because "the board is a State agency charged with administering the tax abatement process, its determination is due some deference." *French* v. *Assessors*

[9] We assume, without deciding, that persons living in a nursing home are nontransient.

*of Boston,* 383 Mass. 481, 482 (1981). Applying these princi-
ples, we conclude that the board did not err in its determination
that nursing homes should be classified as commercial property.

The taxpayer argues on two grounds that G. L. c. 59, § 2A
(*b*), must be read as distinguishing between transient and non-
transient residency. First, the taxpayer points to the express
inclusion of nontransient rooming houses in and the express
exclusion of hotels and motels from "[c]lass one, residential."
See note 1, *supra.* The fact that the Commissioner is given a
specific statutory directive to act in a particular respect, how-
ever, does not operate to limit the Commissioner's actions in
other respects. See *Grocery Mfrs. of Am., Inc.* v. *Department
of Pub. Health,* 379 Mass. 70, 76 (1979).

Second, the taxpayer asserts that the words "dwelling unit"
and "human habitation" in the description of "[c]lass one,
residential" apply to nursing homes and compel their classifi-
cation as residential property. This is one possible interpretation
of the statute. However, it is not the only one. The statute also
may be read as distinguishing between units in which services
are minimal and those in which services are essential to the
habitation. Because the taxpayer's interpretation is not com-
pelled by the statutory language, we give deference to the
agency's interpretation of the tax statute. See *Xtra, Inc.* v.
*Commissioner of Revenue,* 380 Mass. 277, 283 (1980).

"[T]he remaining question is whether [the] guidelines are a
reasonable exercise of executive authority." *Newton* v. *Com-
missioner of Revenue, supra* at 121. The guidelines distinguish
residential group quarters such as apartment buildings and dor-
mitories from commercial group quarters such as nursing homes
and halfway houses. We conclude that there is a reasonable
basis for this differentiation. The salient distinction between
nursing homes and residential group quarters is one not of
transience, but of service.

The common thread of the commercial group quarters is
their service-related functions and the relationship between
those functions and the economic life of the enterprise. The
entire economic basis for a nursing home is to provide services
rather than simply to provide residential quarters. The board

found that people enter nursing homes because they need care and treatment services and that the room and board provided is only a "necessary incident" to those services. It is clear that in the absence of these services none of the residents could use the nursing home as a dwelling place.

Moreover, the nursing home does not approximate normal family or residential living.[10] The daily living routine of nursing home patients is highly supervised and closely regulated.[11] The degree of supervision and regulation is incompatible with the activities normally associated with ordinary living or habitation.

In reaching its conclusion, the board also considered factors such as the average yearly cost per person ($13,000), the source of payments from health care providers, the ratio of employees to residents, and the number of employees performing functions relating to room and board. See note 8, *supra*. Thus, the nursing home properly could be classified as commercial.

[10] We note that dormitories and lodging houses are distinguished from nursing homes in licensing statutes. See, e.g., G. L. c. 140, § 22 (1984 ed.).

[11] Statutes governing nursing homes are codified under G. L. c. 111 (1984 ed.), entitled "Public Health." General Laws c. 111, § 71, defines a convalescent or nursing home as "any institution, however named, whether conducted for charity or profit, which is advertised, announced or maintained for the express or implied purpose of caring for four or more persons admitted thereto for the purpose of nursing or convalescent care." General Laws c. 111, § 72, gives authority to the Department of Public Health to classify nursing homes and to promulgate rules and regulations. These are codified in 105 Code Mass. Regs. 150.000 (1978). Section 72C governs lighting and ventilation in nursing homes and § 72D requires telephone service for use of nursing home residents and gives authority for the department to promulgate regulations. See 105 Code Mass. Regs. 151.860 (1978). Section 72E governs inspection and violation procedures and enforcement powers. Sections 72F-72L relate to abuse, mistreatment, or neglect of patients in any regulated facility, including nursing homes. Sections 72M-72U govern appointment and duties of regulated facilities. Section 72V requires each nursing home to provide storage space for the personal property of each resident, and gives authority to the department to promulgate regulations. See 105 Code Mass. Regs. 151.500 (1978). Section 73 provides for criminal penalties for keeping unlicensed nursing homes and for other violations. Section 71A½ deals with an administrator's managing the funds of a resident. 105 Code Mass. Regs. 150.000. In addition, G. L. c. 112, §§ 108-117 (1984 ed.), set forth licensing requirements for nursing home administrators.

We conclude that the board did not err in holding that the guidelines properly classified nursing homes as commercial and that the assessors properly relied on these guidelines in classifying the taxpayer's property.

The decision of the board is affirmed.

*So ordered.*