HARTFORD/WINDSOR HEALTHCARE PROPERTIES,
LLC *v.* CITY OF HARTFORD

TRINITY HILL REALTY, LLC *v.* CITY OF HARTFORD
(SC 18498)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Argued April 26—officially released August 31, 2010

*Jonathan M. Starble*, with whom, on the brief, was *Marybeth C. McPadden*, for the appellants (plaintiff in each case).

*Ralph W. Johnson III*, with whom was *Michael C. Collins*, for the appellee (defendant in both cases).

### Opinion

VERTEFEUILLE, J. The dispositive issue in this appeal is whether the trial court properly affirmed the decision of the board of assessment appeals (board) for the defendant, the city of Hartford (city), which had affirmed the classification by the city's tax assessor of two parcels of real estate on which nursing homes were located as commercial properties for purposes of real estate taxation on the ground that the nursing homes did not contain "dwelling units used for human habita-

tion" to otherwise be deemed apartment property or residential for the purposes of General Statutes § 12-62n (a) (1) and (3).[1] The plaintiffs, Hartford/Windsor Healthcare Properties, LLC, and Trinity Hill Realty, LLC,

[1] General Statutes § 12-62n provides in relevant part: "(a) For the purposes of this section:

"(1) 'Apartment property' means a building containing five or more dwelling units used for human habitation, the parcel of land on which such building is situated, and any accessory buildings or other improvements located on such parcel;

"(2) 'Base year' means the fiscal year immediately preceding the fiscal year in which a municipality levies property taxes on the basis of assessments derived from a revaluation implemented pursuant to section 12-62; and

"(3) 'Residential property' means a building containing four or fewer dwelling units used for human habitation, the parcel of land on which such building is situated, and any accessory buildings or other improvements located on such parcel.

"(b) Notwithstanding any provision of the general statutes or any special act, municipal charter or any home rule ordinance, any municipality in which the provisions of section 12-62d are effective for the assessment year commencing October 1, 2005, may, by ordinance, adopt the property tax system described in this section, provided the assessor of such municipality determines that without implementation of such property tax system, implementation of a revaluation for the assessment year commencing October 1, 2006, would result in an increase of twenty per cent in the share of the total grand levy for all property in the year following the base year, for the property classes composed of apartment property and residential property.

"(c) In any municipality that adopts the property tax system under this section, the assessor shall determine a rate of assessment for apartment property and residential property for the assessment year in which a revaluation is effective, that will have the effect of increasing the average property tax as a result of revaluation for the property classes composed of apartment property and residential property, by three and one-half per cent over the property tax for said property classes in the base year. Tax increases on apartment property and residential property provided for in this subsection shall be used to reduce, in the amount derived from such increases, the surcharge under section 12-62d. The assessor shall recalculate the rate of assessment for apartment property and residential property for each of the four assessment years following the assessment year in which the provisions of this section become effective such that the average property tax for the property classes composed of apartment property and residential property increases as a result of said revaluation by three and one-half per cent over the average property tax provided by this subsection for such property classes in each prior fiscal year. Notwithstanding the provisions of subsection (b) of section 12-62a, the assessor shall establish a rate of assessment for all real property other than apartment property and residential property, to effectuate the provisions of this section. . . ."

appeal,[2] pursuant to General Statutes § 12-119,[3] from the judgment of the trial court resolving their municipal tax appeals in the defendant's favor. The plaintiffs claim on appeal that the trial court improperly concluded that the nursing homes did not constitute " '[a]partment property' " under § 12-62n (a) (1) and, therefore, improperly upheld the board's classification.[4] We dis-

---

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[4] The trial court also concluded that the plaintiffs' properties did not constitute " '[r]esidential property' " under § 12-62n (a) (3) because each of the subject nursing homes contain substantially more than four units. On appeal, the plaintiffs address this issue only in a footnote in their brief. In this footnote, the plaintiffs assert that this court could conclude that each of the nursing homes is a single dwelling unit, thereby making the parcels residential property under § 12-62n. See footnote 1 of this opinion. They further assert, however, that the trial court's conclusion that the properties do not constitute residential property because the plaintiffs' properties have not yet been classified as either "residential property" or "apartment property." Because the plaintiffs do not cite any authority or develop their claim with analysis, we conclude that the claim is inadequately briefed. See, e.g., *Connecticut Light & Power Co. v. Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]). We therefore will not address it.

agree, and, accordingly, we affirm the judgment of the trial court.

The following facts, either found by the court or stipulated to by the parties,[5] and procedural history are relevant to this appeal. Each of the plaintiffs is the owner of a parcel of real estate in Hartford that is occupied by a nursing home.[6] The nursing homes are divided into residential rooms, most of which are occupied by two patients.[7] Each room contains bedroom furnishings and a bathroom with a sink and toilet, with central bathing facilities on each floor. The rooms do not contain a kitchen; each nursing home has a central kitchen that provides the patients with three meals a day. During their stay at the facility, patients receive full-time nursing and rehabilitative care from the nursing home staff.

Pursuant to § 12-62n, in 2006, the city adopted a system of real estate taxation in which the effective rate of taxation for a particular parcel depends on whether the property is classified as residential property, apartment property or commercial property. Under this system, commercial property is subjected to a substantially higher rate of taxation. For the purposes of the grand list of October 1, 2006, the city's tax assessor classified the plaintiffs' nursing homes as commercial property.

Pursuant to General Statutes § 12-111 (a),[8] the plaintiffs contested the tax assessor's classifications for their

---

[5] The parties filed a stipulation of facts in the trial court.

[6] Initially, Trinity Hill Realty, LLC, also challenged the tax assessor's classification of an additional parcel of real estate that contains a parking lot utilized by one of its nursing homes, but it subsequently withdrew that claim.

[7] At oral argument in this court, counsel for the plaintiffs conceded that the nursing home residents are "patients" of the nursing home.

[8] General Statutes § 12-111 (a) provides in relevant part: "Any person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. . . ."

Although § 12-111 (a) was amended by No. 09-196, § 1, of the 2009 Public Acts, those changes are not relevant to this appeal. For purposes of convenience, we refer to the current revision of that statute.

respective properties by appealing them to the board. After a hearing, the board denied the plaintiffs' requests for a change in the classification of the nursing homes.

Thereafter, each plaintiff separately appealed from its respective 2006 assessment to the trial court pursuant to § 12-119, claiming that the board's classifications of the properties were illegal and its assessments manifestly excessive. See footnote 3 of this opinion. Prior to trial, the plaintiffs filed a motion to consolidate their two separate municipal tax appeals and also to bifurcate the trial into a classification phase and a valuation phase. The trial court granted the plaintiffs' motion.[9] Following a trial to the court on the classification issue, the trial court affirmed the board's classification of the nursing homes as commercial properties in a single memorandum of decision that applied to both of the plaintiffs and their respective properties, and, accordingly, entered one judgment. Thereafter, the parties entered into two stipulations regarding the valuation of the nursing homes, with the plaintiffs reserving their right to appeal the classification of the properties. The trial court rendered judgment consistent with the stipulations, and this single joint appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiffs claim that the trial court improperly affirmed the board's decision, concluding that the nursing homes do not constitute "apartment property" for purposes of § 12-62n (a) (1) because they do not contain "dwelling units used for human habitation . . . ." Specifically, the plaintiffs contend that the phrase "dwelling units used for human habitation" is broad and includes a nursing home, despite the provision of medical services at the nursing home. The plain-

---

[9] The trial court consolidated the two appeals because, although each appeal concerned a different property, the plaintiffs raised the same issue regarding classification.

tiffs also claim that the purpose of § 12-62n is furthered by the inclusion of nursing homes within the definition of apartment property. In response, the defendant asserts that the trial court properly affirmed the board's decision that the plaintiffs' nursing homes do not constitute apartment property. Specifically, the defendant claims that the language of § 12-62n and related statutes supports the trial court's conclusion that a nursing home is not an apartment property as defined in § 12-62n (a) (1). The defendant further claims that the trial court's conclusion is consistent with the legislative purpose behind § 12-62n. We agree with the defendant.

The issue of whether a nursing home is properly classified for tax assessment purposes as "apartment property" under § 12-62n (a) (1) presents a question of statutory construction, over which we exercise plenary review. *Ziotas* v. *Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when

read in context, it is susceptible to more than one reasonable interpretation. . . . Additionally, statutory silence does not necessarily equate to ambiguity. . . .

"[W]e are [also] guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003); *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008) ([T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter. . . .)." (Citations omitted; internal quotation marks omitted.) *In re Jan Carlos D.*, 297 Conn. 16, 21–22, 997 A.2d 471 (2010). As a result, it is well settled that when two incongruent readings of a statute are equally plausible, the statute is ambiguous. See, e.g., *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 9, 976 A.2d 668 (2009); *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 12, 961 A.2d 373 (2009).

"Claims that an assessor has misclassified property and, consequently, overvalued it, comprise a category of appeals frequently pursued under the aegis of § 12-119. See, e.g., *Pauker* v. *Roig*, 232 Conn. 335, 338, 345, 654 A.2d 1233 (1995) (challenging property's assessment as subdivision lots instead of undivided parcel); *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff*, 228 Conn. 476, 477, 636 A.2d 834 (1994) (same); *Wysocki* v. *Ellington*, 109 Conn. App. 287, 295–96, 951

A.2d 598 (challenging assessor's failure to classify property as forest land), cert. denied, 289 Conn. 934, 958 A.2d 1248 (2008); *Saybrook Point Marina Partnership* v. *Old Saybrook*, 49 Conn. App. 106, 109, 712 A.2d 980 (challenging property's assessment as condominium when still legally apartment building on date of assessment), cert. denied, 247 Conn. 904, 720 A.2d 515 (1998); *Stratford Arms Co.* v. *Stratford*, 7 Conn. App. 496, 497–98, 508 A.2d 842 (1986) (same). In such cases, the determinative issue typically is whether, as a matter of law, the property at issue properly was subject to taxation as the type of property falling within the classification applied by the assessor. See *Stratford Arms Co.* v. *Stratford*, supra, 499. If the plaintiff can show that it was not, it necessarily follows that the resulting assessment was manifestly excessive. See, e.g., *Saybrook Point Marina Partnership* v. *Old Saybrook*, supra, 112–13 (remanding case for new trial on issues of assessment and valuation after concluding that property illegally was assessed as condominium); see also *Stratford Arms Co.* v. *Stratford*, supra, 502 (setting aside judgment upholding assessment of property as condominium and remanding case with direction to reinstate prior assessment as apartment building after concluding that property illegally was assessed as condominium); cf. *Timber Trails Associates* v. *New Fairfield*, 226 Conn. 407, 413, 627 A.2d 932 (1993) (claim of improper declassification of forest land, coupled with allegation of thirtyfold tax increase, cognizable under § 12-119)." *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 740–41, 961 A.2d 338 (2008).[10]

---

[10] The plaintiffs additionally assert that the trial court improperly concluded that § 12-62n is a tax exemption statute and, therefore, improperly applied the rules of construction applicable to tax exemption statutes, under which exemptions are construed against the taxpayer. *Altray Co.* v. *Groppo*, 244 Conn. 426, 432, 619 A.2d 443 (1993). Instead, the plaintiffs claim that the trial court should have applied the rules of construction for tax imposition statutes, whereby ambiguities are construed in favor of the taxpayer. *Prudential Property & Casualty Ins. Co.* v. *Bannon*, 233 Conn. 243, 248, 658 A.2d 567 (1995). On the basis of our previous discussion of our case law

Pursuant to § 1-2z, we begin with the text of the statute. Section 12-62n (c) provides in part: "In any municipality that adopts the property tax system under this section, the assessor shall determine a rate of assessment for apartment property and residential property for the assessment year in which a revaluation is effective, that will have the effect of increasing the average property tax as a result of revaluation for the property classes composed of apartment property and residential property, by three and one-half per cent over the property tax for said property classes in the base year. Tax increases on apartment property and residential property provided for in this subsection shall be used to reduce, in the amount derived from such increases, the surcharge under section 12-62d. . . ." Section 12-62n (a) (1) defines " '[a]partment property' " as "a building containing five or more dwelling units used for human habitation, the parcel of land on which such building is situated, and any accessory buildings or other improvements located on such parcel . . . ." See footnote 1 of this opinion. The statute, however, neither defines nor provides any indication of what constitutes "dwelling units used for human habitation . . . ." General Statutes § 12-62n (a) (1) and (3).

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a

that addresses similar issues, we conclude that § 12-62n is a real estate classification statute because the determinative issue arising in this appeal is whether the nursing homes properly were subject to taxation as commercial property rather than residential property, which is a classification issue. See, e.g., *Saybrook Point Marina Partnership* v. *Old Saybrook,* supra, 49 Conn. App. 112–13. Accordingly, we do not apply the rules of construction applicable to either a tax imposition or a tax exemption statute.

term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 288 Conn. 628, 636, 953 A.2d 877 (2008).

The word "apartment" is defined with substantial similarity in a number of dictionaries, each referring to use by an individual or a family for a residence. For example, the American Heritage Dictionary of the English Language (3d Ed. 1992) defines "apartment" as "[a] room or suite of rooms designed as a residence and generally located in a building occupied by more than one household . . . [a] suite of rooms within a larger building set aside for a particular purpose or person." See also Random House Unabridged Dictionary (2d Ed. 1993) (defining "apartments" as "a set of rooms used as a dwelling by one person or one family"); Black's Law Dictionary (6th Ed. 1990) ("apartment house" means "[a] building arranged in several suites of connecting rooms, each suite designed for independent housekeeping, but with certain mechanical conveniences, such as heat, light, or elevator services, in common to all persons occupying the building"). These definitions do not seem applicable to a patient's room in a nursing home because the room is shared with another patient and it does not contain all the necessary elements of a residence, such as bathing and kitchen facilities.

Because the legislature chose to define " '[a]partment property' " as a property containing "dwelling units used for human habitation"; General Statutes § 12-62n (a) (1); but did not define this phrase, we next turn to the dictionary to define the term "dwelling." See, e.g., Black's Law Dictionary, supra ("dwelling" means "the apartment or building, or group of buildings, occupied by a family as a place of residence"); Webster's Third New International Dictionary ("dwelling" means "a

building or construction used for residence: abode, habitation"); American Heritage Dictionary of the English Language, supra ("dwelling" means "[a] place to live in; an abode"); Random House Unabridged Dictionary, supra ("dwelling" means "a building or place of shelter to live in; place of residence; abode; home").

We conclude, based on our textual analysis, that § 12-62n is not plain and unambiguous in that it is not clear from the language of the statute whether a patient's room in a nursing home constitutes a dwelling unit[11] used for human habitation within the meaning of § 12-62n (a) (1).[12] We, therefore, consult extratextual sources to determine the legislature's intent in adopting § 12-62n. General Statutes § 1-2z.

We first turn to the legislative history. Although our review of the legislative history of § 12-62n does not shed light on the precise issue of whether the legislature intended to include nursing homes within the classification of apartment property, we are nonetheless guided in a general sense by the purposes underlying this legislation. Representative Art Feltman, who represented

---

[11] We acknowledge that the term "dwelling units" is used in other statutes. See, e.g., General Statutes § 19a-420 (2) (" '[r]esident camp' means any youth camp which is established, conducted or maintained on any parcel or parcels of land on which there are located dwelling units or buildings intended to accommodate five or more children . . . for at least seventy-two consecutive hours and in which the campers attending such camps eat and sleep"); General Statutes § 47a-54c (a) ("Each building used as a tenement, lodging or boarding house shall be furnished with adequate and suitable privy vaults or water closets. There shall be at least one such water closet or vault for each two dwelling units or apartments of two rooms or less each, and one such water closet or vault for each dwelling unit or apartment of three or more rooms."). Those statutes, however, demonstrate the broad applicability of the term "dwelling units," which further suggest the ambiguity of that term.

[12] We note that although the plaintiffs and the defendant do not explicitly argue in their briefs filed in this court that § 12-62n is ambiguous, both briefs cite § 1-2z and the plaintiffs' brief cites the legislative history of § 12-62n, which we may consider only if the statute is ambiguous. We therefore construe the briefs as implicitly acknowledging that § 12-62n is ambiguous.

Hartford in the General Assembly, explained the impact of the proposed statute as follows: "What this [b]ill does is enable the revaluation in Hartford, which has been delayed for two years, to go forward. It would [go] forward this year. It does provide some relief to *residents* from the full impact of revaluation. It provides for a margin of relief of only 3.5 [percent] per year, and it provides for relief for businesses in the amount of 6.5 [percent] in total. . . . This [a]mendment . . . is the result of a cooperative effort between businesses and residents in Hartford. It is a sharing of the tax burden. It is a sharing of the shift resulting from revaluation." (Emphasis added.) 49 H. Proc., Pt. 20, 2006 Sess., pp. 6091–92. Representative Feltman further explained the purpose underlying the bill as follows: "A major reason why the . . . Greater Hartford Chamber of Commerce is supporting this [b]ill and has been lobbying in favor of this [b]ill in the hallways is because it is the goal of everyone to increase the rate of [home ownership]. And home ownership only happens if homes are affordable, and the taxes are affordable, and in order to make sure, [to provide an incentive for] people to come to Hartford and to buy homes and to be owner-occupants, be it downtown or in the neighborhoods, we can't hit them with a 50 [percent] tax increase as soon as they get here." Id., pp. 6209–10. Representative Feltman's remarks make clear that the bill that became § 12-62n was intended to help individuals purchase homes in Hartford and then reside in them. This purpose is not furthered by including nursing homes within the definition of apartment property because the patients that reside in the nursing homes are not owners of the properties; they do not purchase the properties.[13]

---

[13] Unlike landlords who own the property and receive a direct benefit from a lower property tax, renters potentially receive an indirect benefit. A landlord with reduced property taxes could, hypothetically, pass along those savings to his tenants by reducing the rent. Put another way, if a landlord was subject to higher property taxes, the landlord would likely raise his tenant's rent to cover his additional expense.

Moreover, in the present case, the parties stipulated that the fees for 90 percent of the patients at the nursing homes are paid by medicaid[14] through the state department of social services at a rate that is based on an administrative formula. The fees for the remaining patients are paid either through the federal medicare program, private insurance or by payments from the assets of the patients. Although a component of the administrative formula used to assess fees for the medicaid residents is based on the municipal real estate tax paid by the nursing homes, the overwhelming majority of the patients of the nursing homes personally would not realize any savings from a change in the rates charged to medicaid. For both of these reasons, we conclude that including nursing homes within the classification of apartment property would not further the purpose of the legislation.

Returning to the text of § 12-62n with this legislative purpose in mind, we can see that the statute benefits two types of property: residential property and apartment property, both as defined in the statute, and both of which could be "owner occupied," consistent with the intent of the statute. It seems highly unlikely that a nursing home would be owner occupied, and, therefore, giving a nursing home owner the tax benefit of § 12-62n would not be consistent with legislative intent. In addition, we note that the legislature chose to use the specific term "apartment property" to describe one of the two types of property that benefit from § 12-62n. The legislature did not choose to employ any broader terms, such as "multifamily property" or "multioccupant property," terms that might encompass the nursing homes, with their multioccupant rooms, that are at issue in the present appeal. The decision to use the term

[14] Medicaid is a joint state and federal public assistance program that subsidizes long-term medical care pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.

"apartment" in lieu of other terms thus suggests that the legislature intended the benefit of § 12-62n to apply only to buildings that contain apartments.

Other provisions in our statutes demonstrate that the legislature is aware that there are various types of different residential healthcare facilities and that it knows how to make specific reference to a "nursing home" when it intends to do so. For instance, the legislature has identified several types of residential healthcare facilities and included nursing homes in the definition of " '[i]nstitutions' " that are licensed by the state. See General Statutes § 19a-490 (a) (" '[i]nstitution' means a hospital, residential care home, health care facility for the handicapped, nursing home, rest home . . . substance abuse treatment facility"). The text of § 19a-490 (a) thus indicates that the legislature knows how to use the specific term "nursing home" in our statutes when it intends to and thus suggests to us that its failure to use that term in § 12-62n was purposeful. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 299, 933 A.2d 256 (2007) (legislature knows how to convey its intent expressly).

Furthermore, in § 19a-490 (c), the legislature defined a " 'nursing home' " as "an establishment which furnishes, in single or multiple facilities, food and shelter to two or more persons unrelated to the proprietor and, in addition, provides services which meet a need beyond the basic provisions of food, shelter and laundry . . . ." General Statutes § 19a-521 provides in relevant part: " 'Nursing home facility' means any nursing home or residential care home as defined in section 19a-490 . . . which provides, in addition to personal care required in a residential care home, nursing supervision under a medical director twenty-four hours per day, or any chronic and convalescent nursing home which provides skilled nursing care under medical supervision and direction to carry out nonsurgical treatment and

dietary procedures for chronic diseases, convalescent stages, acute diseases or injuries . . . ." By defining nursing home so as to include the provision of services beyond the basic needs of food and shelter, §§ 19a-490 (c) and 19a-521 further demonstrate that the legislature generally understands that nursing homes are different from dwellings that are used for human habitation but that do not provide additional services, such as apartments.

This court never has addressed whether a nursing home constitutes an "apartment property" or whether it contains dwelling units for purposes of § 12-62n. The Appellate Court, however, has addressed a similar issue, and it rejected the contention that a nursing home is a residential dwelling. In *Connecticut Light & Power Co.* v. *Overlook Park Health Care, Inc.*, 25 Conn. App. 177, 593 A.2d 505 (1991), the Appellate Court considered whether a nursing home falls within the definition of "residential dwelling" for purposes of General Statutes § 16-262e (c), which imposes liability on the "owner, agent, lessor or manager of a residential dwelling . . . ." The Appellate Court affirmed the trial court's determination that § 16-262e (c) did not apply to nursing homes because they do not constitute residential dwellings. *Connecticut Light & Power Co.* v. *Overlook Park Health Care, Inc.*, supra, 180. In doing so, the Appellate Court relied on the definition of a nursing home as a licensed institution that provides personal care, meals and nursing and medical supervision twenty-four hours a day, which is contained in § 19a-521. Id. The Appellate Court further concluded that "[t]he trial court's determination that a building designed to provide food, shelter and total health care services to clients who pay a single fee for all of these services is not within the ambit of a residential dwelling for the purposes of § 16-262e (c) is both reasonable and logical." Id. Similarly, there is no dispute that the nursing homes in the present case

are designed to provide food, shelter and medical services twenty-four hours a day for a single fee. Accordingly, *Connecticut Light & Power Co.* supports the trial court's determination that a nursing home is not included within the classification of " '[a]partment property" for purposes of § 12-62n.

We next turn to a decision from outside this jurisdiction that we find persuasive. In *McNeill* v. *Board of Assessors*, 396 Mass. 603, 604, 487 N.E.2d 849 (1986), the Massachusetts Supreme Judicial Court concluded that the appellate tax board properly classified a nursing home as commercial, rather than residential, property for tax purposes. The classification statute at issue in *McNeill*, identical to the current version of the statute, defined residential property as " 'property used or held for human habitation containing one or more dwelling units including rooming houses with facilities designed and used for living, sleeping, cooking and eating on a non-transient basis.' " Id., 603 n.1; see Mass. Gen. Laws c. 59, § 2A (b) (1990). The statute continued on to define "commercial property" as "property used or held for use for business purposes and not specifically includible in another class, including but not limited to any . . . business . . . service . . . medical, or religious enterprise . . . ." (Internal quotation marks omitted.) *McNeill* v. *Board of Assessors*, supra, 603–604 n.1; see Mass. Gen. Laws c. 59, § 2A (b) (1990).

The owners of the nursing home in *McNeill* asserted that the property fell within this definition of residential property because the nursing home was designed for living, sleeping, cooking and eating and the residents were there on a nontransient basis. *McNeill* v. *Board of Assessors*, supra, 396 Mass. 605–606. After assuming for the purposes of its decision that the nursing home residents were nontransient, the Massachusetts Supreme Judicial Court concluded that it was reasonable to classify nursing homes as commercial property

because "[t]he common thread of the commercial group quarters is their service-related functions and the relationship between those functions and the economic life of the enterprise. The entire economic basis for a nursing home is to provide services rather than simply to provide residential quarters. The board found that people enter nursing homes because they need care and treatment services and that the room and board provided is only a 'necessary incident' to those services. It is clear that in the absence of these services none of the residents could use the nursing home as a dwelling place." Id., 607–608. The court further reasoned that "the nursing home does not approximate normal family or residential living. The daily living routine of nursing home patients is highly supervised and closely regulated. The degree of supervision and regulation is incompatible with the activities normally associated with ordinary living or habitation." Id., 608.

On the basis of the legislative intent of § 12-62n, which was to keep taxes on residential property low in order to promote home ownership and owner occupied dwellings, and the use of the term "apartment property" in the statute, as opposed to making specific reference to nursing homes in § 12-62n, and in reliance on the reasoning of our Appellate Court and the Massachusetts Supreme Judicial Court as cited herein, we conclude that the trial court properly determined that the plaintiffs' nursing homes do not contain dwelling units and therefore do not constitute "apartment property" within the meaning of § 12-62n.

The judgment is affirmed.

In this opinion the other justices concurred.