NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-283                                      Appeals Court

 RUSSELL BLOCK ASSOCIATES  vs.  BOARD OF ASSESSORS OF WORCESTER.


No. 14-P-283.

Suffolk.     November 10, 2014. - September 16, 2015.

Present:  Rubin, Brown, & Maldonado, JJ.


Taxation, Real estate tax:  abatement, classification of
     property.  Real Property, Tax.


     Appeal from a decision of the Appellate Tax Board.


     John F. O'Day, Jr., Assistant City Solicitor, for board of
assessors of Worcester.
     Daniel I. Cotton for the taxpayer.


     BROWN, J.  The board of assessors of Worcester (assessors)

challenges a decision of the Appellate Tax Board (board)

granting the taxpayer an abatement of the fiscal year (FY) 2012

tax on its parking garage.  The issue for consideration is

whether the board erred by finding and ruling that the subject

property was a multiple-use property appropriately classified as

part residential and part commercial.[1]  See G. L. c. 59, § 2A(b).

We conclude that the board's classification determination was a

reasonable interpretation of the statutory language.

Accordingly, we affirm the decision of the board.

1.  Facts.  We summarize the board's findings.[2]  In 1992,

the taxpayer, Russell Block Associates, constructed a twenty-

four story residential building (Tower) in the city of

Worcester.  The Tower development project was conditioned on the

construction of a parking garage.[3]  The five-story garage in

issue contains 300 parking spaces and is located across a small

side street from the Tower.  There are no dwelling units in the

garage.  By contract entitled "Agreement to Provide Parking

Spaces," the taxpayer agreed to reserve a minimum of one hundred

spaces and up to a maximum of 250 spaces for exclusive use by

the tenants of the Tower.

---

[1] The assessors have not disputed either the board's reduction of the property's fair cash valuation or the percentage allocations of valuation assigned to each classification.

[2] The board based its findings of fact on the testimony and the exhibits presented at the evidentiary hearing.  None of the evidence was provided to this court.  In fact, the sole document provided from the proceedings below was a copy of the board's "Decision with Findings."  We have confined our analysis to the facts contained in that decision.

[3] Sufficient off-street parking for the proposed use was necessary to comply with city zoning requirements and to meet financing requirements.

For the next nineteen years, the assessors classified the garage as a mixed-use property, taxing a large percentage of its value at the lower residential rate.[4]  In classifying the property in this manner, the assessors followed the guidelines issued by the Commissioner of Revenue (commissioner).[5]  See G. L. c. 58, § 3; McNeill v. Assessors of W. Springfield, 396 Mass. 603, 606 (1986).  Beginning in FY 2012, however, the assessors classified the property as entirely commercial.

2.  Standard of review.  Our task is to embrace an interpretation "consistent with the purpose of the statute and in harmony with the statute as a whole."  Adams v. Assessors of Westport, 76 Mass. App. Ct. 180, 183-184 (2010), quoting from Sudbury v. Scott, 439 Mass. 288, 296 n.11 (2003).  We give a measure of deference to the board's expertise in interpreting the tax statutes it is charged with administering.  See French v. Assessors of Boston, 383 Mass. 481, 482 (1981); Raytheon Co. v. Commissioner of Rev., 455 Mass. 334, 337-338 (2009).

---

[4] In 2010, for example, the taxpayer derived eighty-five percent of its total income from the residential tenants of the Tower.  The board also found that at all material times, the tenants occupied "significantly more than the minimum number of spaces."

[5] In FY 2011, the assessors, applying the commissioner's three-digit coding system, classified part of the garage as code 106 (residential "accessory land with improvement - garage, etc.") and part as code 336 (commercial parking garage).

3. <u>Discussion</u>. Classification determinations for taxation purposes turn on the use of the real property. See G. L. c. 59, § 2A(<u>b</u>). The statute sets forth four distinct use classes: residential, open space, commercial, and industrial. The statute also recognizes the existence of a fifth, mixed-use category of real property, providing in pertinent part, "Where real property is used or held for use for more than one purpose and such uses result in different classifications, the assessors shall allocate to each classification the percentage of the fair cash valuation on the property devoted to each use according to the guidelines promulgated by the commissioner." G. L. c. 59, § 2A(<u>b</u>), as amended through St. 2008, c. 522, § 3.

To start, we agree with the assessors that the doctrine of estoppel has no application in the case. See <u>Cameron Painting, Inc.</u> v. <u>University of Mass</u>., 83 Mass. 345, 350 (2013). Turning to the merits, the primary question in dispute is whether the garage qualified in part for residential classification. See G. L. c. 59, § 2A(<u>b</u>).[6] The assessors first contend that the parking garage is not "used or held for human habitation

---

[6] General Laws c. 59, § 2A(<u>b</u>), provides, in relevant part, "The assessors . . . shall classify such real property according to the following uses: - 'Class one, residential', property used or held for human habitation containing one or more dwelling units . . . . Such property includes accessory land, buildings or improvements incidental to such habitation and used exclusively by the residents of the property or their guests . . . ."

containing one or more dwelling units," G. L. c. 59, § 2A(b), see note 6, supra, and thus cannot satisfy the definitional requirements of § 2A(b). We disagree. This argument ignores the second sentence of the definition, providing that "accessory land, buildings or improvements incidental to such habitation" are included in the definition of residential property. G. L. c. 59, § 2A(b). See McNeill v. Assessors of W. Springfield, 396 Mass. at 606 (describing the statutory definition of residential property as "extremely broad and general"). Compare Salem & Beverly Water Supply Bd. v. Assessors of Danvers, 63 Mass. App. Ct. 222, 222-224, 226-227 (2005) (reservoir and surrounding watershed land did not fit within the definition of accessory residential property).

Applying the statutory language to the facts of the case, the board concluded that for the tax year in question, eighty-five percent of the garage served an "accessory" use for the residential tenants of the Tower. The assessors, we think, cannot show that the conclusion was erroneous. The parking garage was part and parcel of the Tower development plan. The residents of the Tower, as all city dwellers, need a place to park their vehicles. The garage was designed and built to serve the tenants' parking needs and indeed was required to do so to meet zoning and lending requirements for the development of the Tower. On these facts, the board was warranted in concluding

that the garage was an accessory building "incidental to . . . habitation" within the meaning of the statute.  Cf. St. Paul's Sch. v. Concord, 117 N.H. 243, 257 (1977) (applying analogous New Hampshire tax exemption for schools) ("The tax status of . . . parking lots should be determined according to the status of the buildings which they serve.  Where a building is partially taxed, or where one or more buildings served are taxed, a proportionate value of the parking lot should also be taxed"), quoted with approval in Lynn Hosp. v. Assessors of Lynn, 383 Mass. 14, 19 (1981).  Compare also in the zoning context Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 844 (1994), quoting from 6 Rohan, Zoning and Land Use Controls § 40A.01, at 40A-3 (1994) (for zoning purposes, "[a]n accessory or 'incidental' use is permitted as 'necessary, expected or convenient in conjunction with the principal use of the land'").

The second, more difficult question raised by the assessors is whether the property satisfies the exclusive use requirement of the definition in § 2A(b):  "Such property includes accessory land, buildings or improvements incidental to such habitation and used exclusively by the residents of the property or their guests" (emphasis supplied).  G. L. c. 59, § 2A(b).  The assessors contend that where, as here, the entire garage was not used exclusively by the tenants of the Tower or their guests, it did not qualify for residential status.

Although the plain text may be construed in the manner suggested by the assessors, the phrase "used exclusively" is not defined by statute,[7] and in the context of a multiple-use property, the statutory language in issue is amenable to a second interpretation. As noted above, after setting out the four distinct classes based on use, § 2A(b) recognizes the existence of a fifth, mixed-use category. That is, the Legislature recognized that a single property may be used for more than one purpose and that such uses result in different classifications.[8] The garage, as the board justifiably found,

---

[7] By way of contrast, until June 15, 1988, Florida statutory law defined "exclusive use of property" for tax exemption purposes to mean "used one hundred percent for exempt purposes"; thereafter, the definition was amended to mean "use of property solely for exempt purposes." See Fla. Stat. § 196.012(2); Saint Andrew's Sch. of Boca Raton, Inc. v. Walker, 540 So.2d 207, 207-209 (Fla.Dist.Ct.App. 1989) (holding that notwithstanding its residential quality, faculty housing was used exclusively for educational purposes and entitled to exemption).

[8] The Legislature expressly directed local assessors making mixed-use classification determinations to follow the commissioner's guidelines. G. L. c. 59, § 2A(b). As the board noted in support of its decision, the commissioner's coding system contains codes for multiple-use properties, including code 013 for "Multiple-use, primarily Residential" property. See Department of Revenue's Division of Local Services Property Type Classification Codes (revised March, 2012), at 3. The example given by the commissioner of a code 013 property is "a building with a retail store on the first floor, apartments on the upper floors, and a major portion of the related land . . . reserved for tenant parking." The high-rise residential Tower, which we are informed has (1) commercial business on the first floor and (2) a dedicated parking garage, a major portion of which is reserved and, as the board found, actually used for

was one of them.  Reading § 2A(b) as a harmonious whole, as we are required to do, the exclusive use language is appropriately read in this context as referring to that portion of the property used exclusively for residential accessory purposes. Any ambiguities that exist must be resolved in favor of the taxpayer.  See Adams v. Assessors of Westport, 76 Mass. App. Ct. at 184.

The use of the property is the critical criterion for classification purposes.  Adopting the interpretation urged by the assessors would require us to disregard the use restriction on the garage, the statute's provision for mixed-use classifications, and the commissioner's guidelines, which were followed by the assessors for nineteen years.  We prefer an interpretation that is "the most reasonable and sensible in the circumstances."  Bridgewater State Univ. Foundation v. Assessors of Bridgewater, 463 Mass. 154, 160-161 (2012) (rejecting literal interpretation that would lead to absurd or unreasonable consequences).  See Adult Home at Erie Station, Inc. v. Assessor & Bd. of Assessment Review of Middleton, 10 N.Y.3d 205, 214 (2008) (word "exclusively" for tax exemption purposes should not be read literally, but rather means principally or primarily). Contrast Sisterhood of Holy Nativity v. Tax Assessors of

residential tenant parking, could be found to fall within this code.  See note 4, supra.

Newport, 73 R.I. 445, 447-448 (1948) (building must be used exclusively for religious purposes to entitle owner to exemption; primary use is not sufficient).

We agree with the assessors that in the sense of being operated for profit the parking garage is strictly commercial. However, their argument that the taxpayer's prospective customer base was not relevant to the use inquiry is mistaken. In Lynn Hosp. v. Assessors of Lynn, 383 Mass. at 15-16, the facts established that the adjacent parking garage owned by the hospital, a charitable organization granted tax-exempt status under G. L. c. 59, § 5, Third, was used not only by parkers on their way to the hospital (an exempt use), but also by parkers going to a nonexempt private medical building as well as by the general public. The Supreme Judicial Court held that the taxpayer was entitled to a partial exemption for the percentage of the parking garage actually used for exempt purposes. Id. at 17-19. Compare Vassar Bros. Hosp. v. Poughkeepsie, 97 A.D.3d 756, 759 (N.Y.App.Div. 2012) (law provided exempt property must be "used exclusively" for exempt purposes; as only portion of garage was allocated for use reasonably incidental to purpose of hospital, parking garage was partially exempt).

The Lynn Hospital case falls within a long line of cases supporting, notwithstanding the absence of express statutory authority, the practice of carving out, based on actual use,

portions of real property for partial exemption and partial taxation. See Milton Hosp. & Convalescent Home v. Assessors of Milton, 360 Mass. 63, 70 (1971), and cases cited; WB&T Mort. Co. v. Assessors of Boston, 451 Mass. 716, 717-718, 724-725 (2008); Mount Auburn Hosp. v. Assessors of Watertown, 55 Mass. App. Ct. 611, 613, 620 (2002). Although the Lynn Hospital case arose under a different tax statute, the facts of that case support the board's application of the apportionment principle by analogy.

In sum, the board was warranted in classifying the parking garage as a multiple-use property subject to taxation under the allocation method specified by § 2A(b). The decision of the Appellate Tax Board is affirmed.

So ordered.

RUBIN, J. (dissenting). The statute in this case is unambiguous, and because it is a fundamental rule of statutory construction in our Commonwealth that the words of an unambiguous statute should be interpreted according to their plain meaning, I respectfully dissent. See Bridgewater State Univ. Foundation v. Assessors of Bridgewater, 463 Mass. 154, 158 (2012).

The words used by the Legislature in the definition of "residential" property set out in G. L. c. 59, § 2A(b), as amended through St. 2008, c. 522, § 3, are clear. "Class one, residential" property status is limited to "property used or held for human habitation containing one or more dwelling units . . . . Such property includes accessory land, buildings or improvements incidental to such habitation and used exclusively by the residents of the property or their guests. . . ." (Emphasis added.) The garage here of course is not used for human habitation, but is an "accessory . . . building[]"; the board's findings establish, and it is conceded by the taxpayer, that it has never been used exclusively by the Tower residents and their guests. Therefore, the garage is not residential property within the meaning of the statute.

In an attempt to get around this, the court majority argues, at least at first, that the statute is ambiguous, and that the exclusive use language can refer in this context "to

that portion of the property used exclusively for residential accessory purposes." Ante at        .  But the statutory language is clear.  The garage is an accessory building, and an "accessory . . . building[]" must be "used exclusively" by the residents or guests of the residential property to which it is an accessory to be entitled to classification as residential property.  To say that only a portion of the building must be "used exclusively" by residents or guests is not to construe an ambiguous clause about exclusive use.  It is to read it out of the statute.

To be sure, the statute also contains a "mixed use" provision that states, "Where real property is used or held for use for more than one purpose and such uses result in different classifications, the assessors shall allocate to each classification the percentage of the fair cash valuation of the property devoted to each use according to the guidelines promulgated by the commissioner" (emphasis added).  G. L. c. 59, § 2A(b).  But in this case the use of a part of the garage for residents of the Tower does not result in a "different classification[]" of that portion of the garage from the commercial classification of the rest of the garage.  None of the garage is residential property because the garage is neither used for human habitation nor is it used exclusively by residents of the Tower or its guests.  Rather, the entire garage

-- the parts used by Tower residents and the parts available to the public -- is all properly classified as "'Class three, commercial', property used or held for use for business purposes and not specifically includible in another class . . . ." G. L. c. 59, § 2A(b). The majority would rely on Lynn Hosp. v. Assessors of Lynn, 383 Mass. 14, 17-19 (1981), in support of a mixed-use classification, but that case holds only that under a different statute that does not contain an "exclusive use" provision, that portion of a garage owned by a hospital and which it used itself can be exempt from taxation even though another portion is not. It has no bearing on the issue in this case.

Of course there are debates about the proper way to construe statutes. Indeed, there is some indication that questions concerning the proper canons of statutory construction are becoming more pronounced in our legal culture. Compare, e.g., King v. Burwell, 135 S.Ct. 2480, 2495 (2015) ("Petitioners' arguments about the plain meaning of [the Affordable Care Act] are strong. But while the meaning of the phrase [relied upon by Petitioners] may seem plain 'when viewed in isolation,' such a reading turns out to be 'untenable in light of [the statute] as a whole.' . . . In this instance, the context and structure of the Act compel us to depart from what would otherwise be the most natural reading of the pertinent

statutory phrase"), with <u>id</u>. at 2497 (Scalia, J., dissenting) ("Let us not forget . . . <u>why</u> context matters:  It is a tool for understanding the terms of the law, not an excuse for rewriting them").

This debate may in part be reflected here:  The court majority begins by saying the statute is ambiguous, but then, perhaps a bit more candidly, it acknowledges that it is not reading the statute "literally."  Rather, it says that it is construing it in the way that is "the most reasonable and sensible in the circumstances."  <u>Ante</u> at        , quoting from <u>Bridgewater State Univ. Foundation</u> v. <u>Assessors of Bridgewater</u>, 463 Mass. 154, 160-161 (2012).

But the Supreme Judicial Court has instructed that statutory language that is clear and unambiguous is conclusive as to legislative intent, see <u>Commissioner of Correction</u> v. <u>Superior Ct. Dept. of the Trial Ct</u>., 446 Mass. 123, 124 (2006), and that this rule "has particular force in interpreting tax statutes."  <u>Gillette Co</u>. v. <u>Commissioner of Revenue</u>, 425 Mass. 670, 674 (1997), quoting from <u>Commissioner of Revenue</u> v. <u>AMIWoodbroke, Inc</u>., 418 Mass. 92, 94 (1994).  We are bound to apply these rules.  Is the clear construction of the statute I put forth "absurd or unreasonable" such that it may be ignored under the Supreme Judicial Court's decision in <u>Bridgewater State Univ. Foundation</u> v. <u>Assessors of Bridgewater</u>, 463 Mass. at 158?

I am not persuaded.  In fact, I don't see how one can even make the case.  Taxing a garage used by residents of a building across the street as "commercial" property rather than taxing a portion of it as "residential" property obviously isn't "absurd," and I can't see how a choice either way could be called "unreasonable."  These are context-specific lines created in order to balance all the various interests that go into providing property with tax classifications.  They are archetypical decisions of legislatures that, when expressed clearly, should not -- really cannot -- be subject to judicial second guessing.

Do I think it is utterly unfair that the board of assessors of Worcester taxed this garage at a mixed-use rate for some twenty years, then changed its mind and upended the taxpayer's reasonable expectations?  You bet.  But as the court majority correctly notes, <u>ante</u> at       , under settled law, the city cannot be estopped by its prior action.

So that leaves me where I began:  with a clear statute that requires reversal of the Appellate Tax Board decision.  With respect, I dissent.